Argued 20 May; decided 29 July; rehearing denied 16 December, 1901.

## OVIATT *v.* BIG FOUR MINING COMPANY.

. [65 Pac. 811.]

MINES—WATERS—ABANDONMENT.

1. Abandonment, as applied to mining and water appropriations, is an intentional relinquishment of a known right, and such intention must be ascertained from both the conduct and declarations of the appropriator in relation thereto: *Wimer* v. *Simmons*, 27 Or. 1, applied.

WATER DITCH AS AN APPURTENANCE—LOSS OF SUCH RIGHT.

2. A water right and the ditch by which the appropriation is made effective are appurtenances to land, and mere nonuser thereof will not destroy them, unless continued for the time which will bar an action to recover real property; but they can be destroyed in less time by abandonment: *Wimer* v. *Simmons*, 27 Or. 1, applied.

EVIDENCE OF ABANDONMENT.

3.   Where an owner of a mining right and ditch became financially involved, left the premises, sold the movables thereon, allowed the property to be sold for delinquent taxes, and made no attempt to claim or use it for eighteen years, though residing all that time within sixty miles of it, his intention to abandon is conclusively established, notwithstanding his evidence, after others had appropriated the property and improved it, that he "always calculated to go back and work there again if he could."

DILIGENCE IN PERFECTING AN APPROPRIATION OF WATER.

4.   A claimant of a water right must with reasonable diligence perfect his application of the appropriation to some beneficial use, and more or less time will be deemed reasonable as the nature and magnitude of the enterprise and the resources of the persons interested may vary; thus, a claimant having a placer claim under and several miles from the head of an abandoned ditch, who posted a notice of appropriation at the head of the ditch, within a year thereafter recorded a notice and opened two miles of ditch, and during the ensuing three years opened the entire ditch, the latter part of the work requiring rock blasting and heavy timber construction, exercised diligence commensurate with the kind and volume of work accomplished, and is entitled to enforce the water rights claimed.

From Josephine :   HIERO K. HANNA, Judge.

Bill by P. H. Oviatt and others against the Big Four Mining Company and others to prevent interference with a mining ditch.   From a decree dismissing the complaint, plaintiffs appeal.                               REVERSED.

For appellants there was a brief over the name of *Colvig & Reames*, with an oral argument by *Mr. William M. Colvig*.

For respondents there was a brief and an oral argument by *Mr. Geo. W. Colvig*.

MR. JUSTICE MOORE delivered the opinion.

This is a suit to enjoin the diversion of water from a nonnavigable stream, and to prevent interference with a mining ditch.   The transcript shows that in May, 1876, one D. C. Courtney agreed to purchase certain placer mines in Josephine County, Oregon, for the purchase price of which he gave the owners his promissory note, payable

in two years, and received their bond for a deed of the premises; and, having entered into possession thereof, he thereupon constructed a ditch and flume from Pickett Creek to said mines, a distance of about six and one fourth miles, and diverted and used the water therefrom in the fall of 1876 and the winter and spring of the next year in mining for gold. The venture proving unprofitable, he failed to pay the note or secure a deed to the property, and in October, 1877, left the premises, since which time he never visited the mines, though living within about sixty miles thereof, and never made any inquiry respecting the ditch or water right until the spring of 1896. The plaintiff Oviatt, having secured a placer mine lying under and about four miles from the head of said ditch, posted a notice thereat on November 22, 1893, to the effect that he claimed an appropriation of one thousand five hundred inches of the water of said creek, and all the water of Painter and Slide gulches, tributaries thereto. His notice was recorded June 18, 1894, and that year he commenced at his mines and opened Courtney's old ditch, reconstructed the flume to said gulches, the waters of which he diverted and used in operating his mine, and also cut out the brush and removed the logs on the line of the old ditch to its head. Thereafter he conveyed an undivided one half interest in the ditch and water right to the plaintiffs Miller and Smith, who with him leased the property to the plaintiff Barnebergh. The defendant Owenby on August 28, 1896, posted a notice at the head of the Courtney ditch to the effect that he and his associates claimed an appropriation of two thousand inches of the water of Pickett Creek, and thereafter constructed a flume and opened the old ditch its entire length, enlarging the part of it which Oviatt had opened; and on October 10, 1896, one J. M. John, having secured from Courtney a quitclaim deed of all his interest in the ditch

and water right, conveyed the same to the Big Four Mining Company, a corporation organized by its codefendants, to which they conveyed all their interest in the mines, ditch,. and water right; and said company has been using the waters diverted by said ditch in operating the mines Courtney agreed to purchase, its title thereto having been secured by a sale thereof for delinquent taxes. A controversy having arisen respecting the right of the parties to appropriate the waters of Pickett Creek and to use said ditch, this suit was instituted, and, it resulting in a decree of dismissal, plaintiffs appeal.

The questions presented for consideration are whether Courtney abandoned his right to the ditch and to the use of the water diverted from Pickett Creek, and, if so, was the plaintiffs' attempt to reconstruct the flume and to open the old ditch prosecuted with such reasonable diligence as to entitle them to the use of the water of said creek? Courtney, as defendants' witness, in answer to the inquiry as to whether he intentionally abandoned the ditch prior to his conveyance to John, says: "No, sir; I do not know that I had. If I had, I did not know it. Q. Had you ever intended to abandon the ditch prior to that time? A. No, sir; I did not intend to. I always calculated, if I could, I would go back and work there again. Q. You always claimed it as your property, did you? A. Yes, sir." This witness further testifies that after leaving the mine in 1877 he sold some lumber that he had on the premises, and, in speaking of the reason for doing so, he says: "I busted up on the thing, and was selling everything I could to pay my debts." When he went away from the mine the ditch was in good repair, and one John Hall, who moved into his house on the premises, was directed by him to look after the property. ··Hall, appearing as plaintiffs', witness, testifies that he took charge of the premises when Courtney left, and

remained thereon until 1879, when the flume broke down. The court below found that Courtney never abandoned his ditch, and that the plaintiffs had no authority from him to use it.

1.   Abandonment, as applied to the doctrine of appropriation of water to a beneficial use, may be defined to be an intentional relinquishment of a known right: *Mallett* v. *Uncle Sam Min. Co.* 1 Nev. 188 (90 Am. Dec. 484). The intention of the party who made the appropriation must govern in determining whether he has abandoned his right, such intention to be ascertained from his conduct and declarations in respect thereto: *Wimer* v. *Simmons*, 27 Or. 1 (39 Pac. 6, 50 Am. St. Rep. 685, and note); *Myers* v. *Spooner*, 55 Cal. 257.

2.   In *Dodge* v. *Marden*, 7 Or. 456, it was held that the water rights for mining and other purposes secured under the act of congress of July 26, 1866, are rights pertaining to real property, and can not be lost by nonuser, short of the period for the limitation of actions to recover such property. It will be observed that the court in that case impliedly held that the nonuser of a right of appropriation for said period affords conclusive evidence of an intention to abandon such right. In *Sieber* v. *Frink*, 7 Colo. 148 (2 Pac. 901), it was held that a failure to use water is competent evidence of an abandonment of the right of appropriation, and, if continued for an unreasonable period, creates a disputable presumption of an intention to abandon it, which may be overcome by satisfactory proof to the contrary. In *Davis* v. *Gale*, 32 Cal. 26 (91 Am. Dec. 554), water having been used in a placer mine until the gold was extracted therefrom, the appropriators dispersed, leaving their ditch in care of a licensee who was authorized to use it; and two years thereafter,

the appropriators having sold their interest in the ditch
for a nominal sum, it was held that the jury might, from a
consideration of these circumstances, have found an aban-
donment, and, if so, such subsequent sale would not re-
vive a prior right.   To the same effect, see *Davis* v. *Butler*,
6 Cal. 510 ; *Richardson* v. *McNulty*, 24 Cal. 339 ; *Derry* v.
*Ross*, 5 Colo. 295. In *Smith* v. *Hope Min. Co*. 18 Mont.
432 (45 Pac. 632) , a mill propelled by water having been
shut down, in which condition it remained nine years in
charge of a keeper, it was held that, as the water was an
appurtenance to the mill, the nonuser appearing under
such circumstances afforded no evidence of an intention
to abandon the right.   Mr. Justice DE WITT, speaking
for the court in deciding the case, says : "The nonuser
of water for so long a period, and especially a period
longer than the statute of limitations, is certainly very
potent evidence, if it stood alone, of an intention to aban-
don.   Abandonment is a question of intention.   *   *   *
But, whatever force the fact of nonuser for nine years
may have had in showing an intention to abandon, that
force was wholly offset and contradicted by the other evi-
dence in the case, so as to leave, in our opinion, not even
a conflict of testimony.   It appears that when the Algon-
quin Mill was shut down in 1883 a man was employed to
drain all the pipes and oil the machinery, for the reason
that the company could not use the water when the mill
was shut down.   The water was a necessary appurte-
nance to the mill,—necessary, as appears by the testi-
mony, as a matter of fact, and an appurtenance as a
matter of law in this jurisdiction.   *   *   *   During the
period while the mill was shut down—that is, for nine
years—it was cared for by the owners.   It was left in
charge of persons resident in the Territory and the State
of Montana.   Some one always had charge of the prop-
erty, and it appears by the evidence that for a very large

portion, if not all, of the time a custodian or watchman was upon the premises, caring for them. It can not be contended for a moment that there was a scintilla of evidence tending to prove that the Algonquin Company intended to abandon the mill. Every act shows that they did not so intend. They did not use the water, simply because the machinery of the mill was not in motion."

3. In the light of these decisions, we think it is apparent that Courtney intended to abandon the ditch and water right when his promissory note matured, and his right to enforce the bond for a deed was lost by nonpayment thereof. When he left Hall in charge of the property, he probably had until the following spring in which to meet the payment of his obligation; and until that time expired he may have entertained a hope of securing a purchaser, or obtaining money in some other manner to pay for the mines. But, when he defaulted in payment of his note, we think he voluntarily surrendered all his interest in the ditch and water right to the persons from whom he agreed to purchase the premises. Courtney having diverted the water of Pickett Creek and applied it to the mining claims which he agreed to purchase, the appropriation undoubtedly became appurtenant to that property. The operation of the mines, however, proved unremunerative; and this, together with the expenditure of about $6,000 in constructing the flume and ditch, evidently necessitated a breach of his engagements, and manifests an intention to surrender the property held under the bond for a deed to the obligors named therein, together with all the improvements made thereon, and the appurtenances he had annexed thereto. The sale of the unused lumber is a circumstance tending to raise an inference that he considered the material placed by him in the flume as a part of the estate

which reverted to the owners, but that, the lumber not attached to the premises being at his disposal, he sold it, as he says, "to pay his debts." He testifies that he built and left several houses upon the premises, but, instead of evidencing an intention to retain the property, we think it manifests a purpose to surrender these buildings to the mine owners. Believing, as we must in the absence of any testimony to the contrary, that the ditch and water right became the property of the said owners, Courtney had no title thereto after his default; and, this being so, the defendants secured no interest whatever in the ditch or water right by his conveyance. The defendants' title to the mine having been secured by a tax sale thereof shows that the owners placed but little value upon it, and evidences. an intention upon their part to abandon the ditch and water right surrendered to them by Courtney. This right not having been exercised nor the waters of the stream used upon the premises for eighteen years clearly establishes an intention to abandon the right, and the claim of Courtney, now asserted by the defendants, is too stale to be considered by a court of equity.

4. This brings us to a consideration of the remaining question,—whether the repair of the old ditch by Oviatt was prosecuted with such reasonable diligence as to entitle him to the use of any water from Pickett Creek. The testimony shows that he built a wagon road for some distance, so as to enable him to reach his mines; that he opened the old ditch for a distance of about two miles, and conducted the waters of Painter and Slide gulches thereto, which he used in mining; and that he cut the brush and removed the logs from the upper gulch to the head of the old ditch, so that a horse could be driven along the line thereof. In making an appropriation of

water to a beneficial use, no importance can be attached to the point at which the initial work is prosecuted, provided the public has sufficient notice thereof. It must be admitted, however, that the construction of a ditch beginning at the point of diversion would ordinarily afford more efficient notice of an intention to appropriate water to a beneficial use than though the digging of such conduit were commenced at the premises to be benefited by the appropriation. That the defendants had notice of Oviatt's intention to appropriate the water of Pickett Creek, we think, is beyond doubt ; for he posted a notice at the head of the ditch when he first claimed the right, and, though the notice was repeatedly torn down, he, as often as it occurred, reposted others, on the assumption that his right depended upon the existence of the information imparted by his notice. This notice was recorded before either of the defendants claimed any adverse right to the use of the water. Oviatt also began at the point of diversion in Pickett Creek, put in two boxes, and opened the old ditch about one hundred feet, whereupon he turned the water therein, which, flowing down to a rocky bluff, was permitted to return into the creek, and this was before the defendants attempted to make any diversion. They gave notice of their intention to divert the water in the selfsame manner. We think, therefore, it may be safely concluded that they had notice of Oviatt's intentions in this respect. To entitle a party to the use of water as against an adverse claimant thereof, he must prosecute the work necessary to the appropriation with reasonable diligence : *Hindman* v. *Rizor*, 21 Or. 112 (27 Pac. 13); *Cole* v. *Logan*, 24 Or. 304 (33 Pac. 568); *Low* v. *Rizor*, 25 Or. 551 (37 Pac. 82); *Wimer* v. *Simmons*, 27 Or. 1 (39 Pac. 6, 50 Am. St. Rep. 685, and note); *Nevada Ditch Co.* v. *Bennett*, 30 Or. 59 (45 Pac. 472, 60 Am. St. Rep. 777, and note). What constitutes such diligence must necessarily

depend upon the nature and magnitude of the enterprise, and to some extent upon the organized effort put forth in accomplishing the desired object. An aggregation of capital, it must be admitted, could complete the work in less time than could be reasonably expected of a man of ordinary means, though his impecuniosity is not to be considered in determining what is a reasonable time. From the upper gulch, to which Oviatt had reopened the ditch and rebuilt the flume, to the head of the old ditch, quite a portion of the conduit had to be constructed of lumber or by blasting through rock, thereby necessitating a considerable outlay; and, in view of these circumstances, we think Oviatt and his associates have exercised that degree of diligence which entitles them to enforce the right he initiated. This leads to a reversal of the decree, and one will be here entered granting the relief demanded in the complaint.                    REVERSED.

Decided 8 July, 1901.