Decided 3 January, 1905.

### GRANDE RONDE ELECTRICAL CO. *v.* DRAKE.

78 Pac. 1031.

STATUTES—APPROPRIATION OF WATERS BY ELECTRICAL COMPANIES— WHEN RIGHT IS PERFECTED—EMINENT DOMAIN.

1. B. & C. Comp. §§ 5022 and 5023, authorize corporations engaged in furnishing electrical power for all purposes to use the surplus water of the streams of the state for water power, and to condemn the rights of riparian proprietors, and also rights of way for ditches. Section 5026 declares that when the point of diversion shall have been selected the appropriator shall post a certain notice thereat, and Section 5027 requires the filing for record within ten days thereafter of a similar notice, and a map showing the general route of the ditch. Section 5028 provides that, when such corporation shall have acquired the right to appropriate water in the manner provided, it may condemn lands necessary for the right of way for its ditch. *Held,* that where a corporation organized for furnishing electrical power for all purposes has selected a point for the diversion of the water of a stream, and has surveyed and located the line of its ditch, and has posted the required notice, and filed the notice and map, its right to appropriate the water is thereby acquired. Thereafter the corporation may maintain an action of condemnation without showing that it is the sole owner of the banks of the stream in question from the point of the proposed diversion to the mouth thereof, or that it has secured from the riparian proprietors below the proposed point of diversion the right to divert the surplus water in such stream.

CONSTITUTION—EMINENT DOMAIN—PRIVATE USE.

2. The provision in Const. Or. Art. I, § 18, that private property shall not be taken for public use without just compensation first assessed and tendered, impliedly prohibits the taking of private property for private use, even though just compensation be made therefor.

EMINENT DOMAIN—LEGISLATIVE AND JUDICIAL QUESTIONS.*

3. The necessity of exercising the right of eminent domain in general classes of cases is a legislative question, but whether the use in a particular instance is public or private, and the extent of the use necessary, are to be determined by the courts as questions of fact; for example, the legislature may determine that corporations furnishing electricity for sale shall be allowed to condemn private property for their use, yet as to the nature of the use to which a particular piece of property is to be put and the extent of the needs of the condemnor, there may be a question, which the courts must decide.

---

*NOTE.—See 42 Am. St. Rep. 406 for collections of authorities on two questions: Whether the Determination of What is a Public Use is a Legislative or Judicial Question; and Whether the Necessity for Taking May be Disproved. See, also, articles, When the Question of the Existence of a Public Use May be Considered by the Courts, 88 Am. St. Rep. 926-946; and Expediency of Exercise of Right to Condemn, 4 L. R. A. 786, and 7 L. R. A. 151.     REPORTER.

SUIT TO CONDEMN WATER AND DITCH RIGHTS FOR ELECTRICAL PURPOSES.
4. Sections 5022-5027 of B. & C. Comp. declare the use of water of
the streams of the State for furnishing electrical power for all purposes
a public use, and authorize corporations created for such purpose to use
such streams therefor, so that the use may not materially impair the
rights of prior appropriators, on the corporation complying with certain
prescribed conditions. Section 5028 declares that when such corporation
shall have acquired the right to appropriate the water "in the manner
hereinbefore provided it may proceed to condemn lands and premises neces-
sary for right of way for its ditch"; and Sections 5029 and 5030 authorize
such corporations, when authorized as so provided, to appropriate water
and construct and maintain a ditch, to maintain an action to condemn a
right of way for such ditch, and also for the condemnation and appropria-
tion of the right to the flow of the water in any stream from which it is
proposed to divert water below the point of diversion vested in riparian
proprietors. *Held,* that a corporation, having so acquired the right to
appropriate water, may maintain an action either to condemn land for a
ditch, or to condemn the right to have the water flow in the channel of the
stream through the premises of a riparian proprietor, or it may sue for
both purposes in one action when both rights are vested in the same
defendant.

From Union: ROBERT EAKIN, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is an action by the Grande Ronde Electrical Co. against
A. H. and H. D. Drake to condemn a right of way for a ditch
across defendants' premises, and also their interest as riparian
proprietors in and to the surplus water of a nonnavigable
stream. The complaint states that plaintiff is a corporation
organized to construct ditches, and to appropriate the surplus
water of Catherine Creek, in Union County, to be used in gener-
ating electrical power to operate a railway, to furnish artificial
light, and to propel machinery; showing a compliance with the
initiatory requirements of the statute (B. & C. Comp. § 5022,
et seq.), and averring a necessity for a ditch of the size and
capacity stated, an intention to complete the work, a description
of defendants' real property affected thereby, and an inability to
agree with them as to the compensation to be paid for the injury
which they will sustain. It is not alleged, however, that plaintiff
is the sole owner of the land bordering on the stream from the
point of the proposed diversion to the lower terminus, nor that it
had secured from the riparian proprietors the right to divert the
surplus water in the creek between those points. A demurrer to
the complaint on the ground that it did not state facts sufficient
to constitute a cause of action was sustained, and, for a failure
further to plead, the action was dismissed, and plaintiff appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Leroy Lomax.*

For respondent there was a brief over the name of *Crawford & Crawford,* with an oral argument by *Mr. Thomas H. Crawford.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

The question to be considered is whether or not it was necessary, as a condition precedent to the assertion of the right sought to be invoked, to allege in the complaint that plaintiff was the sole owner of all the land bordering on both sides of Catherine Creek, from the head gate of the proposed ditch to the lower terminus thereof, or had secured from the riparian proprietors on that stream the exclusive right to divert and use the surplus waters thereof. A general statement of some of the provisions of the statute on which this action is based, so far as they relate to the power of a corporation to condemn rights of way for ditches, and to appropriate the surplus water of a nonnavigable stream, is deemed essential to a proper understanding of the inquiry involved.

1. The use of water of streams in this State for the purpose of furnishing electrical power for all purposes is declared to be beneficial and a public necessity, and the right to divert unappropriated water therefrom for such use is granted: B. & C. Comp. § 5022. All corporations having title or possessory right to any land shall be entitled to the use and enjoyment of the water of any stream within the State, to furnish electrical power for any purposes, "so that such use of the same does not materially affect or impair the rights of prior appropriations": B. & C. Comp. § 5023. All such corporations may appropriate and divert such waters, and may condemn rights of way for ditches for carrying the same, and may condemn the rights of riparian proprietors upon the stream from which such appropriation is made, upon complying with the terms of this act: B. & C. Comp. § 5024. Such corporations may enter upon any land for the purpose of locating a point of diversion of the water intended to be appropriated, and upon any land lying between such point and the lower terminus of its proposed ditch, for the purpose of examining the same, and of locating and surveying the line of such

ditch: B. & C. Comp. § 5025. When the point of diversion shall have been selected, such appropriator shall post in a conspicuous place thereat a notice in writing containing a statement of the name of the ditch and of the owner thereof, the point at which its head gate is proposed to be constructed, a general description of the course of said ditch, the size or dimensions of the same in width and depth, the number of cubic inches of water (by miner's measurement under a six-inch pressure) intended to be appropriated: B. & C. Comp. § 5026. Within 10 days from the date of posting such notice, such appropriator shall file for record in the office of the county clerk or recorder of conveyances, as the case may be, of the county in which said ditch is situated, a similar notice, and at the same time shall file a map showing the general route of said ditch: B. & C. Comp. § 5027. When such corporation shall have acquired the right to appropriate the water "in the manner hereinbefore provided," it may proceed to condemn lands and premises necessary for right of way for its ditch, not exceeding 50 feet in width: B. & C. Comp. § 5028. Whenever any corporation "authorized as hereinbefore provided to appropriate water and to construct and maintain a ditch," or to furnish electrical power for any purpose, and to condemn lands for right of way, is unable to agree with the owner of such lands as to compensation to be paid therefor, such corporation may maintain an action in the circuit court of the county in which the lands sought to be appropriated are situated, for the purpose of having such lands appropriated to its use, and for determining the compensation to be paid to such owner therefor. The proceedings in such action, to final determination, shall be the same as those prescribed in Chapter 2 of Title 41: B. & C. Comp. § 5029. Such corporation may also maintain an action for the condemnation and appropriation of the right to the flow of water in any stream from which it proposes to divert water below the point of diversion, vested in the owners of lands lying contiguous to such stream by virtue of their location: B. & C. Comp. § 5030.

An examination of the statute, the substance of which has been stated, shows that the legislature has given corporations organized to furnish electrical power for all purposes authority to condemn

the rights of riparian proprietors in and to the flow of the surplus water in the channel of a stream, and also the right to condemn such lands as may be needed for ditches therefrom. It is argued in support of the judgment herein that the compensation required to be paid to the several riparian proprietors for their rights in and to such surplus water may be so great as utterly to defeat the furnishing of electrical power, thereby demonstrating that a condemnation of land as a right of way for a ditch is unnecessary, and hence no error was committed as alleged. It might be contended with equal force, in an action to condemn the diversion and appropriation of the surplus water of a stream, that the cost of securing a right of way for a ditch in which to conduct the water might be so excessive as to exhaust the financial resources of the corporation seeking to assert the power conferred, thus thwarting the purpose for which it was organized, and for that reason the action to condemn the diversion of the surplus water should be deferred until the right of way for a ditch in which to conduct it had been secured. As the right to the uninterrupted flow of water in the channel of a stream, and the ownership of the land across which it may be necessary to construct a ditch, are not always vested in the same person, it would follow, in cases of such diverse right and ownership, if the principle insisted upon were adopted, that a condemnation of either separately could never be enforced. When a corporation organized to furnish electrical power for all purposes has selected a point for the diversion of the water of a stream, surveyed and located the line of its ditch, posted the specified notice at the place and in the manner designated, and filed within the time prescribed a similar notice for record in the proper office, together with a map showing the general route of the ditch, the right to appropriate the water is thereby acquired: B. & C. Comp. § 5028.

2. The organic law of the State, regulating the exercise of the right of eminent domain, is, so far as applicable herein, as follows: "Private property shall not be taken for a public use * * without just compensation * * first assessed and tendered": Const. Or. Art. I, § 18. This clause impliedly prohibits the taking of private property for a private use, though just compen-

sation be made therefor: *Witham* v. *Osburn,* 4 Or. 318 (18 Am.
Rep. 287); *Bridal Veil Lum. Co.* v. *Johnson,* 25 Or. 105 (34
Pac. 1026).

3. It has been held by this court that the legislative assembly
must in the first instance declare the necessity for and the expe-
diency of an exercise of the right of eminent domain in an act
conferring power for that purpose, but the question of whether
or not a proposed use is in fact public or private is to be deter-
mined by the courts, independently of the objects expressed in
the charter of the corporation claiming to be the recipient of the
authority, or of the statute purporting to confer it: *Bridal Veil
Lum. Co.* v. *Johnson,* 30 Or. 205 (46 Pac. 790, 34 L. R. A. 368,
60 Am. St. Rep. 818); *Apex Trans. Co.* v. *Garbade,* 32 Or. 582
(52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513); *Fanning* v.
*Gilliland,* 37 Or. 369 (61 Pac. 636, 62 Pac. 209, 82 Am. St. Rep.
758). Whether or not the employment of the water of a stream
to generate electrical power for all purposes is a public or a
private use need not now be determined, but may be subsequently
tried. Nor is it necessary at this time to inquire whether or not
a mere legislative fiat can deprive riparian proprietors of the
right which they enjoy under the rules of the common law—to
have the water of a stream flow in the channel thereof, undimin-
ished in quantity. It would seem, however, that as authority had
been granted to condemn land for a ditch, and also power con-
ferred to condemn the right to have the water of a stream flow
in the channel thereof below the point of diversion, the legislative
assembly had not intended to deprive or even abridge the rights
of a riparian proprietor.

4. Condemnation proceedings are purely statutory, and every
condition prerequisite to an exercise of the right must be strictly
pursued: *Oregonian Ry. Co.* v. *Hill,* 9 Or. 377; *Huddleston* v.
*Eugene,* 34 Or. 343 (55 Pac. 868, 43 L. R. A. 440, 1 Munic.
Corp. Cas. 334). The clause, "When such * * corporation shall
have acquired the right to appropriate water in the manner here-
inbefore provided" (B. & C. Comp. § 5028), evidently means, by
considering the entire context of the act, that, by a strict com-
pliance with the preceding provisions of the statute, a right to
institute an action to condemn the use of water to which a

riparian proprietor is entitled was thereby initiated, and, for the purpose of cutting off intervening rights, relates back to the date of posting the notice: B. & C. Comp. § 5031. If the phrase "in the manner hereinbefore provided" had been omitted from Section 5028, B. & C. Comp., it is quite probable that an action to condemn land for a ditch could not be maintained until the right to divert the surplus water of a stream had been secured.

It will be observed that the phrase quoted refers to the preceding sections of the act, upon a strict compliance with which the right to appropriate water is acquired. The word "appropriate," in the arid region of the United States, is generally understood to mean an application of water to a beneficial use; but, in the section of the statute to which attention is called, the word under consideration cannot be so construed, where the rights of riparian proprietors have attached to a stream. If a corporation organized to generate electrical power for all purposes was the sole riparian proprietor on a stream, a strict compliance by it with the provisions of Sections 5026, 5027, B. & C. Comp., would probably confer upon it the right to appropriate all the water flowing in the channel, and authorize the maintenance of an action to condemn a right of way for a ditch in which to conduct the water across the lands of other persons. In case such corporation owned all the land bordering on a stream between the point of diversion and the lower terminus of its proposed ditch, the word "appropriate" might probably be used in its ordinary acceptation. That the legislative assembly intended it should receive such meaning only in case the plaintiff in an action to condemn a right of way for a ditch was the sole riparian proprietor to be affected by the diversion of water from a stream, is evident from the fact that Section 5030, B. & C. Comp., authorizes the maintenance of an action to condemn the rights of the bank owners between the points of diversion and the lower terminus of the proposed ditch. To hold otherwise would in some instances defeat the very purposes sought to be subserved by the passage of the act, a fair construction of which in its entirety authorizes, in our opinion, the maintenance of an action either to condemn land for a ditch, or to condemn the right to have the water flow in the channel of a stream through the prem-

ises of a riparian proprietor, or both rights may be joined in one action when vested in the same defendant, as a plaintiff may elect. An examination of Section 5030, B. & C. Comp., will show that in the passage of the act, or in the enrollment, the mode to be pursued in condemning the rights of riparian proprietors is wholly omitted. Whether or not such omission will defeat plaintiff's right to divert the surplus water of Catherine Creek, so far as defendants' interest therein may be involved, need not now be determined, believing, as we do, that this action can be maintained to condemn land for the ditch.

It follows from these considerations that the judgment is reversed, and the cause remanded, with directions to overrule the demurrer, and for such further proceedings as may be necessary, not inconsistent with this opinion.          REVERSED.