On Motion to Dismiss Appeal, decided December 31, 1912.

On the merits, argued May 5, decided May 20, rehearing denied July 1, 1913.

# PRINGLE FALLS POWER COMPANY *v.* PATTERSON.*

(128 Pac. 820: 132 Pac. 527.)

**Time—Computation—Time for Filing Transcript.**

1. Where an appeal was perfected on October 10th, and appellants were required to file the transcript within 30 days therefrom, a transcript filed on November 11th, being Monday following Sunday the 10th, is filed in time, Section 531, L. O. L., providing that the time within which an act prescribed by statute is to be done shall be computed by excluding the first day and including the last day unless it falls on Sunday, in which case the last day is also to be excluded.

[As to rules for computation of time, see note in 78 Am. St. Rep. 872.]

[As to inclusion of day of accrual of action in computing limitations, see note in Ann. Cas. 1913D, 1068.]

**Appeal and Error—Time for Serving Transcript—Statutes.**

2. Act of February 16, 1891 (Laws 1891, p. 40), amending act of February 15, 1889 (Laws 1889, p. 4), provided in Section 3 that transcripts on appeal from any county lying east of the Cascade Mountains, except Crook County and others, should be forwarded to the clerk of the Supreme Court at Pendleton, and appeals from the enumerated counties, unless otherwise stipulated by the parties, should be determined at the next succeeding term of the Supreme Court after the appeal was perfected, and should be forwarded either to Salem or Pendleton, as the case might be, by the first term of such court. Act of February 18, 1899 (Laws 1899, p. 167), repealed Section 2 of act of February 15, 1889, by providing for the selection of but one clerk of the Supreme Court, who was required to appoint two deputies, one of them to reside at Pendleton, but this act did not alter the time for the filing of the transcript. Act of February 22, 1899 (Laws 1899, p. 229; L. O. L., § 554), provides that, upon the perfection of an appeal, the appellant shall within 30 days thereafter file with the clerk of the appellate court a transcript or abstract. *Held,* that in view of the statute last quoted, there being only one clerk, it must be construed as a general enactment applicable to the entire state, and operating as an implied repeal of act of February 16, 1891.

---

*The authorities on the rule as to first and last days in computation of time are gathered in an extensive note in 49 L. R. A. 193, and a supplemental note in 15 L. R. A. (N. S.) 686.

As to the abandonment or loss of rights of prior appropriators, see note in 30 L. R. A. 265.     —REPORTER.

**Waters and Watercourses—Right to Divert Waters—Issues.**

3.   The court, in a suit involving the right to divert the waters of a river, need only determine the right as between the parties claiming as appropriators, without having made any actual appropriation of the water, and it will not determine the extent of the right that may be obtained.

> [As to what constitutes an appropriation of water, see note 60 Am. St. Rep. 799.]
> [As to priority of right to use of water of irrigation company, see note in Ann. Cas. 1913D, 625.]

**Waters and Watercourses—Appropriation of Surplus Waters—Infringement of Existing Rights.**

4.   The statutes providing for the manner of appropriating the surplus waters of the state do not permit any infringement of any right to waters obtained before their enactment.

**Waters and Watercourses — Appropriation — "Abandonment"—Acts Constituting.**

5.   An "abandonment," as applied to water appropriation, is an intentional relinquishment of a known right, ascertained from the conduct and declaration of the appropriator.

**Waters and Watercourses—Appropriation—Construction Work—Diligence.**

6.   An appropriator of water must prosecute the construction work with reasonable diligence, as determined from the facts of the case, and diligence requires such consistency of purpose or labor as is usual with persons engaged in like enterprises.

**Waters and Watercourses—Appropriation—Abandonment.**

7.   Under Section 6571, L. O. L., declaring that the right to appropriate water may be lost by abandonment, and providing that if any person, company, or corporation constructing a ditch shall neglect to use the same for two years at any time, the appropriation shall be deemed abandoned, and the water revert to the public subject to other appropriations in order of priority, an appropriator's right may be extinguished by any act showing an intention to surrender or abandon the right, after which, if the person having the right ceases its use for the stipulated period, his interest is lost.

**Waters and Watercourses—Appropriation of Water—Ownership of Banks of Streams—Statutory Provisions.**

8:   Though it is not absolutely necessary that a corporation appropriating water from a stream is the sole owner of the banks from the point of diversion to the mouth of the canal, yet, in view of Section 6552, L. O. L., providing that all persons, firms, and corporations having title or possessory right to any mineral or other land shall be entitled to the use of the water of any lake or running stream to furnish electrical power for any purpose, the claim of one owning riparian land, intended to be used in connection with an appropriation of water and the development of power to the extent that the land may be so utilized, is strengthened.

Waters and Watercourses—Appropriation—Construction Work—Delay—"Unavoidable Casualty."

9. Where a corporation, posting and filing notice of appropriation of water from a river for irrigation and power purposes, located its canal as first surveyed over the National Forest Reserve for a short distance, and endeavored in good faith to obtain a right of way for the canal, and after the expenditure of money to obtain a permit it changed the location of the canal where less power could be obtained, and thereby avoided the difficulty of obtaining a right of way from the federal government, and it engaged in good faith in the construction of its works, it acquired a right to water by appropriation, within Section 6595, Subdivision 3, L. O. L., and the delay in the construction of its canal was due to "unavoidable casualty," within Section 6560.

From Crook: WILLIAM L. BRADSHAW, Judge.

This is a suit by the Pringle Falls Electric Power & Water Company, a corporation, against Charles A. Patterson, Luella C. Parrish, I. B. Grungstad, Charles F. Gesner and the Deschutes Hydro-Electric Company, a corporation, in which a decree was rendered in favor of the plaintiff, and defendants appeal. Respondent files motion to dismiss appeal.

MOTION DENIED.

*Mr. J. LeRoy Smith* and *Mr. Julius N. Hart,* for the motion.

*Mr. Enoch B. Dufur, contra.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. This is a motion to dismiss an appeal on the grounds that the transcript was not filed within the time limited nor at the place prescribed by law. The defendants herein, desiring to review a decision of the Circuit Court for Crook County, caused to be served and filed a notice of appeal and an undertaking thereon, October 5, 1912. No exception was taken to the sufficiency of the sureties, whereupon the appeal became perfected in five days or on October 10, 1912:

L. O. L., § 550. Within 30 days therefrom the appellants were required to file with the clerk of this court a transcript or such an abstract as is demanded by our rules, unless in the meantime an order had been secured enlarging the time: L. O. L., § 554. The time within which an act prescribed by statute is to be done is computed by excluding the first day and including the last, unless the last day falls upon Sunday or some other nonjudicial day, in which case the last day is also to be excluded: L. O. L., § 531. The appeal in the case at bar having been perfected October 10, 1912, the following day was the first upon which the transcript could have been legally filed. Excluding October 11th, the 30 days in which to file the transcript expired November 10, 1912, but as that day fell upon Sunday, the appellants were allowed all of the following day, or Monday, November 11, 1912, when they delivered to our clerk a transcript of the record on appeal which filing was made within the time prescribed: *Boothe* v. *Scriber,* 48 Or. 561 (87 Pac. 887, 90 Pac. 1002); *McCabe-Duprey Tanning Co.* v. *Eubanks,* 57 Or. 44 (102 Pac. 795, 110 Pac. 395).

2. Section 1 of the act of February 15, 1889, commanded that terms of the Supreme Court be held at Salem on the first Monday in March and October, and at Pendleton on the first Monday in May of each year: Laws Or. 1889, p. 4. Section 3 of the act was amended February 16, 1891, demanding that transcripts on appeal from any county lying east of the Cascade Mountains, except Wasco, Crook, Sherman, Klamath and Lake should "be forwarded to the clerk of said Supreme Court at Pendleton." Appeals from Wasco, Crook or Sherman Counties, unless otherwise stipulated by the parties, were directed to be heard and determined at the next succeeding term of the Supreme Court after the appeal was perfected and the tran-

script was required to be "forwarded" either to Salem or to Pendleton as the case might be "by the first day of said term": Laws Or. 1891, p. 40. Section 2 of the act of February 15, 1889, was repealed February 18, 1899, by an act providing for the selection of but one clerk of the Supreme Court, who was required to appoint two deputies, one of whom should reside at Pendleton: Laws Or. 1899, p. 167. When the act was passed requiring a term of the Supreme Court to be held at Pendleton, the statute then in force demanded that, upon an appeal being perfected, the appellant "must by the second day of the next regular term of the appellate court thereafter, file with the clerk of such court the transcript of the cause": Hill's Ann. Laws Or., § 541. Though this section was amended February 25, 1889, the alteration of the enactment made no change in the time of the filing of the transcript: Laws Or. 1889, p. 140. A different date, however, was prescribed by the act of February 22, 1899 (Laws Or. 1899, p. 229), which as far as material herein reads as follows: "Upon the appeal being perfected the appellant shall, within thirty days thereafter, file with the clerk of the appellate court a transcript or such an abstract as the rules of the appellate court may require": L. O. L., § 554.

Construing these provisions *in pari materia,* it is evident that the clause of the statute last quoted, requiring the transcript to be filed with the clerk within 30 days after the appeal is perfected, was intended by the legislative assembly as a general enactment applicable alike to all parts of the state. That part of Section 554, L. O. L., as repeated above, was an implied amendment of Section 3 of the act of February 16, 1891, hereinbefore referred to, amending the requirement that the transcript on appeal "shall be forwarded by the first day of said term at Pendleton," and sub-

stituting therefor the language quoted. When an appellant within the time limited gives the required notice of appeal and files a transcript thereon with the clerk of the court, he has complied with the requirements of the statute, whether the copy of the record is left with that officer either at Salem or Pendleton, for when the transcript has been filed jurisdiction of the cause has been secured and our clerk can send the copy of the record to the proper place for trial, or the court can make an order to that effect. The conclusion here recorded is at variance with the cases of *Judkins* v. *Taffe*, 2 Or. 89 (27 Pac. 221), *Connor* v. *Clark*, 30 Or. 382 (48 Pac. 364), and *Gibbons* v. *Moody*, 33 Or. 593 (55 Pac. 23). In those instances, however, the decisions were rendered before the statute (L. O. L., § 554) was amended in the particulars noted.

The transcript on appeal in the case at bar having been filed within the time limited and with the officer designated, the motion to dismiss the appeal is denied.

DENIED.

Argued May 5, decided May 20, rehearing denied July 1, 1913.

## ON THE MERITS.

(132 Pac. 527.)

Statement by MR. JUSTICE BEAN.

The defendants appeal from a decree in favor of plaintiff. The subject of this suit is the right to divert the waters of the West Fork of the Deschutes River on the land of the plaintiff, in Crook County, near Pringle Falls. Plaintiff is the owner of the northeast quarter of section 23, township 21 south, range 9 east, Willamette meridian. The West Fork of the Deschutes River flows through this quarter section in a northwesterly course. Pringle Falls, with a descent

of approximately 60 feet, is situated near the center of this tract. The estimated amount of water in the river is 1,364 second-feet. O. M. Pringle obtained a patent for this tract of land in 1893. In November, 1906, he and three others incorporated the Pringle Falls Electric Power & Water Company, and on the 17th of that month Pringle and wife executed a deed conveying the land to plaintiff.

On the 15th of December, 1906, in conformity with the statutes of 1891 (Section 6528, L. O. L.) and 1899 (Section 6555, L. O. L.) plaintiff posted and filed a notice reciting that the Pringle Falls Electric Power & Water Company had appropriated and intended to divert 2,880 cubic feet per second of the waters of the Deschutes River, in Crook County, Oregon, ''for general irrigation, manufacturing power, household, electrical power and generating purposes, and for the purpose of reclaiming the arid desert lands of Crook County''; that the point of diversion was on the left bank of the Deschutes River at a point S. 43 deg. W. 20 rods from the southwest corner of the northeast quarter of Section 23; that the canal was to be known as the ''Pringle Falls Electric Power & Water Ditch,'' to be used for power purposes. On the 29th of December, 1906, plaintiff, after making a survey of the proposed course of its canal, filed a copy of the notice, together with a map, field-notes, plans and specifications of the proposed diversion and works, certified to by the county clerk of Crook County, in the office of the State Engineer at Salem, Oregon.

Plaintiff asserts that, within six months after the posting of the notice and the making of the record, it entered upon the actual construction of its proposed ditch and canal, and has prosecuted the same without intermission, except as the same has been prevented by the act of God, the elements, and unavoidable cas-

ualty; that the point of diversion was in the national forest of the United States, and that plaintiff made application for permission to construct and erect a diversion dam, headgate, and canal across the public lands; that on account of necessary amendments and renewals of applications for such right of way the plaintiff was hindered and delayed in prosecuting the work on the canal; that plaintiff has the right to appropriate 2,880 second-feet of water; and that defendant company's claim thereto is in fraud of plaintiff's rights.

The capital stock of the plaintiff company was owned by O. M. Pringle, his wife, and Oglesby Young, until July 29, 1910, when they sold to A. O. Wells, M. C. Donahue, and W. H. H. Dufur. In April, 1911, the plaintiff made a new survey for the canal and site for the power-house, so that the dam, canal, intake, penstock, power-house and headgate would be upon the land of plaintiff. This new point of diversion is located about 1,600 feet down the stream from the old point. Plaintiff excavated about 1,100 cubic yards of earth and stone for the canal, and erected a house on the property, expending the estimated sum of $850 in the prosecution of the work. Plaintiff asserts that it had the capital and would have done more work upon the canal had the United States government allowed a right of way therefor over the forest reserve.

December 30, 1909, O. M. Pringle, the principal owner of the stock in the plaintiff company, gave defendant Grungstad an option for the land, without describing the water right, and on April 18, 1910, gave Patterson and Grungstad written authority, for 40 days, to sell the quarter section for $10,000, and delivered to them for their information a map of the survey for the canal. On May 23, 1910, defendant Gesner, based upon the data indicated on such map, and with-

65 Or.—31

out making any survey for a canal, by filing a duplicate of the Pringle map, made an application to the State Engineer for a permit, under the provisions of the act of 1909, which permit was transferred to the defendant company January 12, 1911. January 4, 1911, Gesner amended his former application, so that his point of diversion is identical with that of plaintiff's.

The defendant Deschutes Hydro-Electric Company claims the right to an appropriation of 800 second-feet of the waters of the stream by virtue of the application for a permit, which was filed by defendant Gesner with the State Engineer on May 23, 1910, approved August 4, 1910, amended January 4, 1911, and assigned to the defendant company. The defendants Patterson, Grungstad, Parrish, and Gesner disclaim any interest in the permit, or to the waters in controversy. Defendant Deschutes Hydro-Electric Company asks that its right to appropriate such waters be affirmed.

The defendant company entered upon the land of plaintiff and commenced clearing and preparing the right of way for a canal. In August, 1911, plaintiff notified them to cease, and ejected the defendant company's employees from the premises. The defendant company brought action in the Circuit Court of that county to condemn a right of way for a canal. After the filing of the application for the permit with the State Engineer, several parties approached Pringle, and others interested in the plaintiff's project, desiring to sell plaintiff the permit for $6,000.

Plaintiff alleges that defendants Patterson and Grungstad, while occupying a confidential relationship with plaintiff as agents for the sale of the land, and having possession of the map, plans, and papers relating to the canal project, conspired with defendants Patterson and Gesner, for the purpose of defrauding

plaintiff of the water right, and brings this suit to cancel the permit issued to Gesner, and to enjoin the defendants from interfering with plaintiff in the diversion of the water. Defendants assert that the plaintiff did not prosecute the work, under its notice of appropriation, with due diligence, and that plaintiff has no right to the appropriation of water claimed; that the right of defendant company, under and by virtue of the permit to 800 second-feet of water, is a valid, subsisting right.                   Modified.

For appellants there was a brief over the names of *Mr. Julius N. Hart* and *Mr. J. Leroy Smith,* with an oral argument by *Mr. Hart.*

For respondent there was a brief and an oral argument by *Mr. Enoch B. Dufur.*

Mr. Justice Bean delivered the opinion of the court.

3. The rights claimed by the plaintiff and the defendant company are inceptive in their nature. Both claim as appropriators. It is only necessary to determine such rights as between the parties. No actual appropriation of the water has been made by either party. The extent of the right, if any, that may eventually be obtained cannot be measured or adjusted by this decision.

Plaintiff gave notice of its appropriation, and conformed to the requirements of Section 6528, L. O. L., and also Section 6555, L. O. L., which are alike in their essentials. The different statutes providing for the appropriation of the water of the lakes and streams of the State of Oregon declare the use thereof, for irrigation and domestic consumption, for the development of the mineral resources of the state, and for furnishing electrical power (Sections 6525, 6551, L. O. L.), to be a public and beneficial use and public necessity, and

the right to divert the surplus waters of such lakes and streams for such beneficial purposes is thereby granted.

In the case of *Grande Ronde Elec. Co.* v. *Drake,* 46 Or. 243 (78 Pac. 1031), it was held that where plaintiff had complied with the provisions of the statute as to posting notices, etc., it had such a right as would enable it to exercise the right of eminent domain, and obtain a right of way for its ditch or canal.

4. The various statutes providing for the manner of appropriating the surplus waters of this state are not intended as a means for the infringement of any right to such waters, obtained before such enactments.

Section 6594, L. O. L., being a part of the act under which the defendant company asserts its right, provides that, subject to existing rights, all waters within the state may be appropriated for beneficial use, as herein provided; but nothing herein contained shall be so construed as to take away the vested right of any person, firm, corporation or association to any water.

Subdivision 3, Section 6595 (Act of 1909), by which vested rights are preserved, is as follows:

"And where any riparian proprietor, or under authority of any riparian proprietor or his or its predecessor in interest, any person or corporation shall, at the time this act is filed in the office of the Secretary of State, be engaged in good faith in the construction of works for the application of water to a beneficial use, the right to take and use such water shall be deemed vested in such riparian proprietor; provided, such works shall be completed and said water devoted to a beneficial use within a reasonable time after the passage of this act."

Subdivision 5 of the same section is to the effect that the right of any person, association, or corporation to take and use water shall not be impaired or

affected by any of the provisions of this act, where appropriations have been initiated prior to the filing of this act, and such appropriators, their heirs, successors or assigns, shall, in good faith, and in compliance with laws existing at the time this act takes effect, commence the construction of works for the application of the water so appropriated to a beneficial use, and thereafter prosecute such work diligently and continuously to completion.

5. The main question to be determined in this case is: Had the plaintiff's right lapsed or been abandoned? "Abandonment," as applied to water appropriation, is an intentional relinquishment of a known right. Such intention must be ascertained from both the conduct and declaration of the appropriation in regard thereto: *Dodge* v. *Marden,* 7 Or. 456; *Oviatt* v. *Big Four Min. Co.,* 39 Or. 118 (65 Pac. 811); *Sloan* v. *Glancy,* 19 Mont. 70 (47 Pac. 334); 1 Wiel (3 ed.), §§ 567, 576.

6. An appropriator must prosecute the construction work with reasonable diligence: 1 Wiel (3 ed.), § 382. What constitutes reasonable diligence must be determined from the facts of each case. Diligence requires such constancy and steadiness of purpose or of labor as is usual with men engaged in like enterprises: Wiel (3 ed.), § 383; *Ophir Co. v. Carpenter,* 4 Nev. 534 (97 Am. Dec. 550); *Oviatt* v. *Big Four Min. Co.,* 39 Or. 118 (65 Pac. 811).

In *Wilson* v. *Globe etc. Co.,* 158 Cal. 137 (110 Pac. 290), it was held that delay caused by the forest service of three years is not lack of diligence, being protected by the Civil Code.

7. As to abandonment, Section 6571, L. O. L., enacts that the right to appropriate water hereby granted may be lost by abandonment, and if any person, company, or corporation constructing a ditch, canal, flume,

or pipe-line, under the provisions of this act, shall fail or neglect to use the same for a period of two years at any time, it shall be taken to have abandoned its appropriation, and the water shall revert to the public, and shall be subject to other appropriations in order of priority; but the question of abandonment shall be one of fact, to be tried and determined as other questions of fact. Such right may be extinguished by any act showing an intent to surrender or abandon the right, after which, if the person having the right ceases its use for the statutory period for abandonment, his interest is lost: *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728).

Section 6560, L. O. L., requires that within six months from the date of the posting of such notice as given by plaintiff, the persons, companies and corporations proposing to appropriate the water therein mentioned shall commence the actual construction of their or its proposed ditch, or canal, or flume, or pipe-line, and shall prosecute the same without intermission (except as resulting from the act of God, the elements or unavoidable casualty) until the same be completed.

8. While under the rule enunciated by this court it is not absolutely necessary that a company appropriating water from a stream be the sole owner of the banks of the stream from the point of diversion to the mouth of the canal, yet Section 6552 of the statute provides that all persons, firms, and corporations having title to, or possessory right to, any mineral *or other land* shall be entitled to the use and enjoyment of the water of any lake or running stream within the state to furnish electrical power for any purposes. The claim of one owning riparian land intended to be used in connection with the appropriation of water and the development of a project for furnishing power for any useful purpose would, to the extent that such land

might be so utilized, be strengthened. Such land is a means of furthering the proposed work.

9. The reason given by plaintiff for not doing more in the construction of its canal is that the canal as first surveyed passed over the National Forest Reserve for a short distance. It appears that plaintiff endeavored in good faith to obtain the right of way, and while the rules of the department delineated the requirements in such a proceeding, undoubtedly the practice at that time for obtaining such right of way was not well established, and delays were necessarily caused, and the project impeded. After the expenditure of some money, and after making such an endeavor to obtain a permit over the forest reserve, plaintiff, by changing its location of the canal to a point where evidently less power could be obtained, has avoided the difficulty of obtaining the right of way from the national government. Section 6556, L. O. L., contemplates such a change.

It appears from all the facts and circumstances of the case that plaintiff was engaged in good faith in the construction of its works for the application of the water to a beneficial use at the time the Gesner permit was approved. Plaintiff's right, therefore, comes within the provisions of Subdivision 3 of Section 6595 L. O. L. The evidence in the case warrants the conclusion that the plaintiff did not construct the canal at an earlier period on account of an unavoidable casualty, within the meaning of Section 6560, L. O. L.

The defendant company's claim was initiated upon the basis of the survey made by plaintiff. It is endeavoring to obtain a right of way for a canal over the land of plaintiff, in direct conflict with plaintiff's contemplated work. The right of plaintiff and defendant company cannot both be maintained, and their contemplated works prosecuted, at the same time. The evi-

dence does not show an intention on the part of plaintiff to surrender or abandon its right to appropriate such water.

The means employed by defendants is of but little moment and unnecessary to consider in detail. The personal defendants were the promoters of the defendant corporation. Plaintiff's right to the appropriation is prior in time and superior to the claim of defendant company. The equities of the case are with the plaintiff. The defendant company's claim to the right of appropriation, as to plaintiff, is fraudulent, and must yield to that of plaintiff's. Defendants should be enjoined from interfering in any manner with plaintiff's appropriation of such waters, or in the construction and completion of the projected works. With this modification, the decree of the lower court is affirmed, plaintiff to recover costs.        MODIFIED.