ROCKY FORD CANAL CO. et al. v. COX, Judge, et al.

No. 5700.   Decided July 8, 1936.   (59 P. [2d] 935.)

THIS OPINION WITHDRAWN. SEE OPINION ON REHEARING IN 92 UTAH 175, 66 P. (2d) 370.

*Christenson, Straw & Christenson,* of Provo, for plaintiffs.

*Cheney, Jensen, Marr & Wilkins,* of Salt Lake City, and *H. D. Hayes* and *Carvel Mattsson,* both of Richfield, for defendants.

MOFFAT, Justice.

On the 15th day of June, 1935, plaintiffs filed in this court a petition for a writ of prohibition. An alternative writ was issued and served upon defendants. Defendants appeared under the order to show cause, filed briefs, and during the November setting of cases the cause was argued and submitted.

Except as a matter of history to show how the cause arose, the facts are of little importance and are not in dispute. Briefly, the defendants in this proceeding filed an application in the district court of the Fifth judicial district of the state of Utah in an action there pending, which action was for the purpose of obtaining a general adjudication of the rights to the use of the waters of the Sevier river system, under the general adjudication statute, chapter 67, Laws of Utah 1919, now title 100 of R. S. Utah 1933. The action has been pending for a number of years. The waters have been distributed by a commissioner appointed by the court, and according to the court's orders. Evidence has been taken and stipulations entered into and filed, but no final judgment or decree has been entered by the court.

On the 7th day of June, 1935, I. Abner Cowley and John B. McMillan, Jr., defendants in this action, being parties to the action then pending for the adjudication of the waters of the Sevier river, entitled *Richlands Irrigation Co.* v. *West View Irrigation Co. et al.*, filed petitions in the district court of Millard county, Utah, where the action was originally commenced, for an order authorizing changes in the point of diversion and place of use of certain waters of the Sevier river system. The ownership of the waters, the place of diversion, and purpose and place of use which were sought to be changed, was in the Cove River Irrigation Company in which defendants were stockholders and water users. This company was owner of a portion of the waters of Cove river, tributary to the Sevier river. The company consented to the proposed change. Notice of the petition to make the change was duly served on the parties interested who appeared by counsel; the same counsel as appear herein. The plaintiffs objected to the jurisdiction of the court to hear and determine the matter as to change of place of diversion or use of the waters mentioned, and alleged the court was without jurisdiction. No question was raised as to the sufficiency of notice, or pleadings to properly present issues. Plaintiffs moved to dismiss the petitions and also demurred thereto. The motions were denied, and the objections and demurrers overruled, and an order entered temporarily permitting the changes asked for by the petitioners in the trial court, defendants here. By the order the water commissioner was directed, among other things, to make observations as to losses, if any, and to report to the court. No answer was filed or issues raised except as raised by the motions and demurrers.

The petitioners in the lower court alleged that the changes of place of diversion and use were requested for the reason that relief through the procedure by filing an application in the state engineer's office could not be secured for "the present year," and that it was necessary to get an order

allowing the requested changes in order to mature various crops that year. Essentially and the only point to be determined is whether or not the statute authorizing the state engineer to receive, consider, and approve or reject if protested an application for the change of a point of diversion or place or purpose of use of water is exclusive and deprives the district courts of jurisdiction in such matters until the procedure by way of the state engineer's office has been complied with.

The statute about which the controversy revolves is section 100-3-3, R. S. Utah 1933, and reads:

"Any person entitled to the use of water may change the place of diversion or use, and may use the water for other purposes than those for which it was originally appropriated, but no such change shall be made, if it impairs any vested right, without just compensation; no change of point of diversion, place or purpose of use shall be made except on the approval of an application of the owner by the state engineer. Before the approval of any such application the state engineer must, at the expense of the applicant to be paid in advance, give notice thereof by publication in some newspaper having general circulation within the boundaries of the river system or near the water source in which the point of diversion of the water is located; such notice shall give the name of the applicant, the quantity of water involved, the stream or source from which the appropriation has been made, the point on the stream or source where the water is diverted, the point to which it is proposed to change the diversion of the water, the place, purpose and extent of the present use, and the place, purpose and extent of the proposed use. Said notice shall be published at least once a week for a period of four weeks. Any person interested may, at any time within thirty days after the last publication of said notice, file with the state engineer a protest against the granting of the application, stating the reasons therefor, which shall be duly considered by the state engineer, and he shall approve or reject the application for change of point of diversion, place or purpose of use. Such application shall not be rejected for the sole reason that such change would impair vested rights of others, but if otherwise proper, it may be approved upon condition that such conflicting rights be acquired. The determination of the state engineer shall be final unless contested in court within sixty days after written notice to the applicant of the action of the state engineer. Any person holding an approved appli-

cation for the appropriation of water may in like manner change the point of diversion, place or purpose of use."

Defendants in this proceeding indicate in their brief that this case in itself is of no importance except as it may become a precedent, as the defendants discontinued the use under the order of the district court upon the application to this court for the writ of prohibition by plaintiffs.

The briefs and arguments of counsel for both plaintiffs and defendants are devoted to the question, as to whether or not the change of place of diversion and use is a permanent change or a temporary one. This application being for a writ of prohibition and the claimed basis for its issue being want of jurisdiction in the district court, we are unable to see how the matter of whether the order sought is to be a permanent one or a temporary one could affect the jurisdiction of the court to make the order during the pendency of a general adjudication suit involving all the water rights of the river system. The statutory language here drawn in question is:

"No change of point of diversion, place or purpose of use shall be made except on the approval of an application of the owner by the state engineer." R. S. Utah 1933, § 100-3-3.

Whether or not the statutory language provides an exclusive method of procedure, conforming to which and not otherwise a change of place of diversion or place or purpose of use may be made, where the proceeding for such is an original proceeding in the district court, and not as an incident to a general determination suit, is not before us and we need not and do not now decide.

The Oregon and Colorado cases and texts based largely upon them, cited by plaintiffs, are not in point in the instant case. In those cases the right to the use of water was held to be appurtenant to the land and in order to change the place of use an application was required to be made to the state engineer. They were all original proceedings; either

injunctive relief to prevent the change or direct proceedings to make the change. None of them was incidental to a general adjudication action as provided for under Utah statutes. The case of *Broughton* v. *Stricklin,* 146 Or. 259, 28 P. (2d) 219, 30 P. (2d) 332, was an injunctive proceeding brought to prevent a change attempted to be made without authority, and is illustrative. On the facts, the same result would, no doubt, have been reached regardless of the statute. The Oregon court, among other matters, held that an application to the state engineer and approval of exchange of place of use of water was a condition precedent to the exercise of the right to change the place from that specified by a decree in a former adjudication of water rights. Inseparable appurtenancy of land and water as provided by the statute occupies a prominent place in the opinion. Literally applied, the Oregon cases represent the extreme doctrine on appurtenancy of water rights and the procedure that must be followed for change of place of use of water.

We need not comment further on the cases cited and discussed in the briefs. Our statutes are different. As heretofore stated, there is pending a proceeding in the district court where the application was filed for a general determination of the rights to the use of the water of the Sevier river system. The court has jurisdiction of the parties and the subject-matter in that action. Has the proper procedure under the circumstances, been pursued to invoke or set in motion that jurisdiction?

The plaintiffs and defendants in this proceeding are admittedly parties to the general adjudication proceeding and appeared therein upon the application to the court for the change of place of diversion and use.

An applicant to be entitled to a peremptory writ of prohibition must show that the tribunal sought to be subjected to the prohibition order is without or acting in excess of jurisdiction, and that the applicant has no plain, speedy and adequate remedy in the ordinary course of law. R. S. Utah 1933, 104-69-1 and 104-69-2. *Con-*

*struction Securities Co.* v. *District Court*, 85 Utah 346, 39 P. (2d) 707. In the instant case, it is a question of jurisdiction only. Chapter 4 of title 100, R. S. Utah 1933, provides a procedure for determination of water rights. It provides also a procedure by application to appropriate unappropriated public waters of the state. These are recognized to be waters to the use of which there is an asserted claim. These are also waters subject to appropriation, that is, unappropriated public waters. By section 100-4-1, R. S. Utah 1933, it is provided that, upon the request of five or more or a majority of water users upon any stream or water source for an investigation relative to water rights, it is the duty of the state engineer to make an investigation, and if conditions justify to file an action in the district court to determine the various rights. Individuals may file an action for determination of their water rights. Such action may by order of the district court become a general adjudication action of the waters of the river system in which the parties are interested. R. S. Utah 1933, 100-4-18. It is also provided (section 100-4-3 as amended by chapter 105, p. 197, Laws of Utah 1935) that when suit is filed the clerk of the district court in which it is filed shall notify the state engineer. The state engineer is then required to examine records, make field investigations and surveys, and report as required by section 100-4-11, and pursuant to that section

"the state engineer shall formulate a report and a proposed determination of *all rights* to the use of the water of such river system." (Italics added.)

Notice, filing of claims, and objections are all provided for.

By the Constitution of the state of Utah (article 8, § 7), "jurisdiction in all matters civil and criminal, not excepted in this Constitution," is conferred upon district courts, and

by article 17, "All existing rights to the use of any of the waters in this State for any useful or beneficial purpose, are hereby recognized and confirmed." The Constitution became effective in January of 1896. The statute heretofore quoted which contains the recognition of the right of making changes of the point of diversion and place or purpose of use of a water right, and which provides the procedure for making it, as well as the procedure for a general adjudication and determination of all the rights of a river system is a part of chapter 67, Laws of Utah 1919. Title 100, R. S. Utah 1933. The Constitution having thus conferred on district courts a general jurisdiction, no limitation may by construction be placed upon that jurisdiction unless the lawmaking power clearly so indicates. To extend the provisions of section 100-3-3, providing that "no change of point of diversion, place or purpose of use shall be made except on the approval of an application of the owner by the state engineer," so as to deprive a court of general jurisdiction of power to litigate such issues where a general adjudication is pending is unwarranted. Such construction tends to defeat rather than to make effective the purpose sought to be accomplished under a general adjudication. As heretofore indicated, a suit seeking a general adjudication for the purpose of determining all of the water rights of a river system imposes upon the state engineer certain duties as to the proposed determination, and during and upon such determination being made,

"The state engineer shall distribute the waters in accordance with said proposed determination until a final decree is rendered by the court, or until the court shall otherwise order; provided, that if the right to the use of said waters has been theretofore decreed or adjudicated, said waters shall be distributed in accordance with such decree until the same is reversed, modified, vacated or otherwise legally set aside." R. S. Utah 1933, 100-4-11.

It is also provided that the state engineer "Shall carry into effect the judgments of the courts in relation to the divi-

sion, distribution or use of water under the provisions" relating to the administration and distribution of water. R. S. Utah 1933, 100-5-3, as amended by Laws of Utah 1935, c. 105. It will be observed that the statute ■ makes it the duty of the state engineer during the time a general adjudication is pending to distribute the water pursuant to the orders of the court, and after judgment is rendered to carry that judgment into effect by distributing the water to those entitled thereto according to the judgment of the court. The state engineer is, as to such duties, made an officer of the court charged with carrying its orders and judgments into effect. No exclusive jurisdiction in such matter seems to be vested during the pendency of such suit in the office of the state engineer, nor is there a conflict of jurisdiction.

In cases where an application is made to the state engineer to appropriate unappropriated water, and such application is protested and an action is brought for a plenary review, the "parties shall be served with process as in other cases and notice of the pendency of such action shall be filed with the state engineer * * * which shall operate to stay all further proceedings [by the State Engineer] pending the decision of the district court." R. S. Utah 1933, 100-3-14, 100-4-1 and 100-4-18. Surely the Legislature did not intend that a different rule should prevail in a general adjudication suit where the engineer is an active participant.

When a judgment is entered upon a general adjudication of the waters of a river system, it is the duty of the clerk of the court to issue certificates to persons awarded the right to use of water in triplicate, setting forth the matters referred to in section 100-4-11, supra.

"Three copies of said certificate shall be transmitted, in person or by registered mail, to such party, who shall, within thirty days, have one of the same recorded in books specially provided for that purpose in the office of the county recorder of the county in which the water is diverted from its natural channel, one in the county where the water is applied, and one shall be delivered to the state

engineer and filed in his office as part of the records thereof." R. S. Utah 1933, 100-4-17.

It is then the duty of the state engineer or a duly authorized assistant, or commissioner duly appointed by the court, to carry into effect the judgment and distribute the water as required by the certificates thus issued, recorded and filed. R. S. 1933, 100-5-3, as amended.

Likewise, if an "owner" files an application to change the point of diversion, place, or purpose of use, and the state engineer withholds his approval, although there appears to be no express authority therefor except upon protest filed and duly considered, the application shall not then be rejected for the sole reason that such change would impair vested rights but may be conditionally approved subject to the acquiring of such conflicting rights. R. S. 1933, 100-3-3. In the language of the statute relating to an application to appropriate water, if the state engineer "rejects" the application, such "owner" is not without remedy. He may apply to the court to have his right to do so determined. The provisions of section 100-3-14, providing for a plenary review of the decisions of the state engineer applicable to section 100-3-5 or 100-3-6, or 100-3-7 are applicable to other decisions of the state engineer affecting the rights of an owner, appropriator, or user of water already appropriated. So far as appears, there is an established right to the use of the water and a recognized place or purpose of use. It is merely a question of jurisdiction of the court to consider or order the change for which the petition was filed.

When an appropriation of water has been made and the right to the use thereof perfected, certain of the elements involved in that right are: (a) Quantity of water appropriated; (b) time, period, or season when the right to the use exists; (c) the place upon the stream at which the right of diversion attaches; (d) the nature of the use or the purpose to which the right of use applies, such as irrigation, domestic use, culinary use, commercial use, or otherwise; (e) the

place where the right of use may be applied; (f) the priority date of appropriation or right as related to other rights and priorities. There are also certain limitations, restrictions, responsibilities, and duties pertaining to a water right. It must be used economically or without waste. It must be so controlled and used as not to damage others. It is so related to the rights of others that regulations are required. When necessary, periods of rotation may be imposed.

When a right to the use of water has been acquired with all the elements involved therein, may it be said the court in a general adjudication suit has jurisdiction to determine all the elements of the right and impose all the limitations, restrictions, liabilities, and duties except one; *the point of diversion?* To change the point of diversion, place, or purpose of use is not the initiation of a new right but making use of an old right at another place or from another point of diversion. The old right may not be used either at the old or new place to the detriment of others. The limitation imposed by the statute on the right to change the place of diversion or place or purpose of use is that it shall not injure the rights of others, or if it does, that before such change is made such rights must be acquired or the injury compensated. Situations may be suggested where the district court upon proper pleadings, notice, and hearing without the consent of the state engineer, and over the objection of the water user or owner, may require the point of diversion or purpose or place of use to be changed. Thus, a point of diversion may be included within the inundated area of a proposed reservoir. An established point of diversion may materially or unreasonably interfere with the general regulation of the stream or source of supply to which the right applies; may cause waste of water; may prevent a full and proper utilization of such waters. Where a change in the point of diversion does not injure any appropriator or user of water, upon proper presentation to the court there would

seem to be no legal reason why such change should not be decreed.

It may, however, be noted that the language of the statute upon which plaintiffs rely (R. S. 1933, 100-3-3) is peculiarly negative;

"no change of point of diversion, place or purpose of use shall be made except on the approval of an application of the owner by the state engineer."

If the "owner" refuses to file an application, may not others under proper circumstances file such application or institute a proceeding to require such consent to make the change? Limitation by the statute of the right to file an application to an "owner" does not create a ▮ situation where others having rights may not find relief. No such limitation on the jurisdiction of the court or rights of water users was intended. All proceedings had before the state engineer for a change in the point of diversion, or place or purpose of use are reviewable by the district court whenever a party interested seeks such review. When a suit is pending before a district court for the purpose of determining the extent and nature of the rights of the various water users, including the place where they shall divert water, it would seem strange to say the Legislature intended to tie the hands of the court and render it powerless to determine the rights and issues relating to a change of the point of diversion in a general adjudication suit. It is quite generally the policy of the Legislature as well as that of the courts to simplify litigation and make legal determinations as effective and enduring as possible. Such was the apparent aim of the law under review. Those provisions of the statute relating to a general adjudication of water rights contain no intimation that the jurisdiction of the district court where such suit is pending is in any way limited. On the contrary, the court is directed to

"determine and establish the rights of the several claimants to the use of the water of said river system or water source; and among other

things it shall set forth the name and postoffice address of the person entitled to the use of the water; the quantity of water in acre feet or the flow of water in second feet; the time during which the water is to be used each year; the name of the stream or other source from which the water is diverted; the point on the stream or other source where the water is diverted; the priority date of the right; and such other matters as will fully and completely define the rights of said claimants to the use of the water." R. S. 1933, 100-4-12, 100-4-15 and 100-4-17.

We are of the opinion the provisions of chapter 4 of title 100, R. S. Utah 1933, with the amendments thereto, vest in the district court complete jurisdiction when a suit has been properly begun and carried forward to determine all the questions that may be raised relating to the parties and the use of the waters drawn into the litigation. The matter of determining the "point on the stream or other source where the water is diverted" is one of the elements of a water right, and is included in the jurisdiction to hear and determine questions drawn in by the general determination. One of the purposes of the general adjudication statute is to prevent a multiplicity of suits. To require an application to the state engineer with the detailed procedure would merely make another suit when all the issues should be determined in one.

We are of the opinion the district court has jurisdiction to hear and determine the matter presented by the petition seeking a change of place of diversion and use. The permanent writ of prohibition applied for is denied and the alternative writ heretofore issued is recalled and set aside. Such is the order. Costs to defendants.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, J., concur.

FOLLAND, Justice (concurring in result).

Only one question is presented by this application for a writ of prohibition; that is, whether the district court of Millard county has jurisdiction to entertain and act upon an application for a temporary change in the point of diversion

and place of use of water of Sevier river, filed in a suit involving the general adjudication of the water rights of the Sevier river system. It is contended by plaintiffs that under no circumstances can any change in point of diversion or place of use, either permanent or temporary, be made without the water user desiring such change filing an application with the state engineer pursuant to the provisions of section 100-3-3. Defendants contend that that section has application only where the water user desires to abandon the right to divert his water at the point or to use it at the place to which he is entitled and to acquire a right, in the nature of a new right, to divert the water at a different point or to use the water at a new or different place, and that when the court has before it the matter of the general adjudication of water rights in any river or water system it may temporarily control the use of such waters pending final adjudication. All the parties to this litigation concede that the provisions of section 100-3-3 are applicable where such permanent change in either respect is desired. Here the petitioning water users do not desire any permanent change in the point of diversion or in the place or nature of use of the water to which they are entitled. Because of an emergency occasioned by drouth, permission was sought to use the water on lands other than those on which they had been used and, to make that use possible, to change the point of diversion. This change was requested for the season only. The problem, stated in another way, is, where the district court has jurisdiction of the subject-matter of the waters of the Sevier river system and of the parties claiming the right to use such waters, does such court have jurisdiction, prior to final decree, to order temporary changes in the place of use and point of diversion where no permanent change with respect to either is requested?

Section 100-3-3, R. S. 1933, provides that:

"Any person entitled to the use of water may change the place of diversion or use, and may use the water for other purposes than those

for which it was originally appropriated, but no such change shall be made, if it impairs any vested right, without just compensation; no change of point of diversion, place or purpose of use shall be made except on the approval of an application of the owner by the state engineer. * * * Any person holding an approved application for the appropriation of water may in like manner change the point of diversion, place or purpose of use."

I see no reason for holding that the statute refers to any other than a permanent change in the place or manner of use or point of diversion already established by decree or approved application for appropriation, and to acquire a new right to take his water at another point or to use it at a different place or in a different manner. Where there is pending in court a proceeding to adjudicate water rights of any system, the matter of point of diversion, manner and place of use, the amount of water to which each claimant is entitled, and the various priorities are before the court for adjudication. The jurisdiction of the court is such that pending final decree and while such matters are in the course of litigation it may entertain petitions and make orders of an interlocutory nature, making temporary or seasonal disposition of the waters and prescribe the terms and conditions on which such use may be had. That is the exercise of a power incidental to the jurisdiction which the court has over the waters of the river and the parties interested by reason of the pendency of the general adjudication action.

Where the owner of a water right desires to permanently change the point of diversion or the place or character of use, he should follow the statute and make a filing with the state engineer. After disposal of such application by the state engineer, either by approval or rejection thereof, any party aggrieved may take the matter to the district court pursuant to the provisions of section 100-3-14. Undoubtedly in such an action, the district court would have jurisdiction, on proper application and notice, to order how and where the water might be diverted or used pending final adjudication,

and the state engineer would distribute the water pursuant to such order.

In this case I do not desire to go farther than necessary to decide the issue before us, and that involves merely the jurisdiction of the district court to direct the temporary use or place of diversion of waters in the action pending before it. Believing that the court has jurisdiction in this respect, I concur in the order indicated in the opinion of Mr. Justice MOFFAT denying the petition for a writ of prohibition and withdrawing the alternative writ heretofore issued.

WOLFE, Justice.

I dissent. I shall consider first the holding of the prevailing opinion that a court having jurisdiction of an action for the *determination* of water rights has original jurisdiction of an application for a permanent change of point of diversion, purpose, or place of use, and, second, that such court has also original jurisdiction to entertain an action for a temporary change. Much which I shall say in regard to the first holding will apply to the second holding, but there are some differences between an application for a permanent change in the point of diversion and one for a temporary change.

As to the holding of the opinion that the district court having jurisdiction of an action for the determination of water rights has original jurisdiction of an application for a change permanently in the point of diversion, the fundamental error lies in the fact that the opinion fails to see that an action for the determination of water rights as provided by section 100-4-1, R. S. Utah 1933, is one to determine existing rights and not one to grant new rights. Note the language of section 100-4-1:

"Upon a verified petition *to the state engineer*, signed by five or more or a majority of water users upon any stream or water source, *requesting the investigation of the relative rights* of the various claimants to the waters of such stream or water source, it shall be the duty of the state engineer, *if upon such investigation he finds*

*the facts and conditions are such as to justify a determination of said rights*, to file in the district court an action to determine the various rights." (Italics supplied.)

In passing it should be realized that under this section the application for an adjudication is not made originally to the court, but to the engineer, and he can exercise a discretion whether to file the action in the court (subject most likely to an appeal from his decision refusing to file it), and that the engineer and not the water users, under this section, filed the action. I shall endeavor later to call attention to the fact that the jurisdiction of the court over an application for a change in the point of diversion, place, or manner or use is derivative, and that even its jurisdiction of a general adjudication under this procedure is, in a sense, derivative. But what is more of importance is to point out that the adudication to determine water rights is a procedure to determine existing rights and not one to grant new rights. Section 100-4-1 speaks of "requesting the investigation of the *relative rights.*" Of course, a right to take water from a different place on the stream which a water user may thereafter apply for, or later gain, cannot possibly be the subject of a determination of a relative right which the court is asked to determine at the time the engineer files the action. By that I do not mean to say that the court has not power to include in its adjudication and decree rights which may arise after the action is begun and which accrue before the final decree is made, but such rights must be acquired in the manner provided for by statute, and cannot be acquired by virtue of the court's jurisdiction to adjudicate and determine rights. A power to grant a right and a power to determine what right a person has are two different things. Proceeding, we find in section 100-4-3, as amended that, "upon the filing of any action for the determination of water rights the clerk of the district court shall notify the state engineer that such has been filed." The section speaks not of an action to acquire rights but to adjudicate them. If one pursues the various

sections dealing with the procedure governing the determination of water rights or relative water rights, it becomes increasingly apparent that the whole scheme contemplated decisions regarding the rights which each water user claimed. It did not contemplate that there should be injected into such adjudications applications for new rights. Might as well contend that an application for an appropriation of water from the stream could be made to the court having general jurisdiction to *determine rights* on that stream. The effort of the opinion to establish that every water user has a vested right to change his place of diversion subject only to the condition that he injure no other person does not bolster up the reasoning. So have certain persons a right to appropriate unappropriated waters under certain conditions. So have persons a right to acquire a homestead or desert entry. This is but the right to gain a right. Certainly, before such a right *is acquired* there is the right to move to acquire it, but the matter we are speaking of in these opinions is what officer an applicant must first resort to to perfect such right to divert water at a different place. Reverting again to the court's opinion, it seems evident that it fails to reveal this distinction between the jurisdiction of the district court to determine what each water user's rights are in the stream as to amount of water, priority, manner and time, and place of use, and the jurisdiction of the court to grant a new right, i. e., a new point from which to take the water from the stream. The opinion states:

"Essentially and the only point to be determined is whether or not the statute authorizing the State Engineer to receive, consider, and approve or reject if protested an application for the change of a point of diversion or place or purpose of use of water is exclusive and *deprives* the district courts of jurisdiction in such matters until the procedure by way of the State Engineer's office has been complied with." (Italics supplied.)

The opinion seems to assume that the district court has jurisdiction, but that it is claimed that the procedure before

the state engineer deprives it of that jurisdiction. The fact is that the district court has no original jurisdiction of an application for a change in the point of diversion, and the fact that it is given jurisdiction of the matter of determining relative rights between water users, no more gives it a jurisdiction to entertain an application for a new right than a court adjudicating the partition of real estate would have jurisdiction in that suit to condemn one of the parcels or jurisdiction over an application to connect a house on one of the lots with a street water main. Such application must first be made to the city with an appeal to correct an arbitrary refusal. Because the court would have before it in litigation the subject-matter of the land in the aspect of apportioning it among various claimants (one form of relative rights in the total land) does not mean that all litigation respecting one or both tracts of land, and a fortiori any application for a new right in respect thereto, could be injected into the litigation. Further evidence that this fundamental error has crept into the opinion appears by the following:

"Whether or not the statutory language provides an exclusive method of procedure, conforming to which and not otherwise a change of place of diversion or place or purpose of use may be made, where the proceeding for such is an original proceeding in the district court, and *not as an incident to a general determination suit*, is not before us and we need not and do not now decide." (Italics supplied.)

It is thus quite apparent that the opinion looks at this application for a new right in respect to water as if it were an "incident to a general determination suit." And again:

"When a right to the use of water has been acquired with all the elements involved therein, may it be said the court in a general adjudication suit has jurisdiction to determine all the elements of the right and impose all the limitations, restrictions, liabilities, and duties except one,—*the point of diversion?*"

The opinion evidently confuses the power of the court to determine as one of the elements of every water right, the

point where the user has the right to divert it (which clearly can and must be done) with the power of the court originally to entertain an application for a new point of diversion. One involves the process of adjudicating one of a bundle of existing rights; the other, the question of whether such a tribunal has power to entertain an application to substitute one rod of such fascet for another.

I confess my inability to see the force of the following portion of the opinion as an aid to the views therein expressed:

"In cases where an application is made to the State Engineer to appropriate unappropriated water, and such application is protested and an action is brought for a plenary review, the 'parties shall be served with process as in other cases and notice of the pendency of such action shall be filed with the state engineer * * * which shall operate to stay all further proceedings (by the State Engineer) pending the decision of the district court.' R. S. Utah 1933, 100-3-14, 100-4-1 and 100-4-18. Surely the legislature did not intend that a different rule should prevail in a general adjudication suit where the engineer is an active participant."

It appears to me that this only illustrates what I have been talking about, to wit, that the jurisdiction of the court is derivative. Is it meant to imply that because further proceedings by the engineer are stayed pending the decision of the district court, that this means that the district court has original jurisdiction? The statement is self-refutatory.

Nor can I seen what relevancy the fact that the state engineer is required to distribute the waters pursuant to the orders of the court pending the general adjudication and after final decree has on this question of whether the state engineer or the court has original jurisdiction to entertain an application for the acquisition of a new right to take water at a point other than that at which the applicant has the right to take it. The opinion says:

"No exclusive jurisdiction in such matter [referring to the matter, I suppose, of the engineer obeying court orders regarding distribution pendente lite and afterward] seems to be vested during the pen-

dency of such suit in the office of the State Engineer; nor is there a conflict of jurisdiction."

I confess my inability to understand the meaning of this portion of the opinion. Obviously it is impossible for the state engineer to get exclusive or any other kind of jurisdiction over the content of an order of the court which he is required to execute until the court issues the order. The paragraph is meaningless to me.

Nor can I see the materiality of that part of the opinion which quotes constitutional provisions. It appears to hold that since the right to change the point of diversion is a right given by statute, the Constitution confers on the court original jurisdiction in regard to that right. But the right is to be gained in a certain way by application to the state engineer. The opinion seems to hold that there is somehow a right already residing in each water user to change his point of diversion at will, subject to certain conditions. But, as stated before, the right to apply, which every water user has, and the acquired right to make the change, are different things. It may be that the conditions would be such that the applicant could never gain the right. It lends only to confusion to treat the right which a water user may obtain if the conditions can be met, as if it was already a perfected right in every water user. Moreover, if article 8, section 7, of our Constitution is given this construction, I see nothing to prevent each person who by law is required to apply to an administrative or quasi-judicial body for a hearing as to whether the conditions pertain on which he is entitled to prevail, from resorting at once to the courts. An injured employee has a right to compensation, certain conditions appertaining. Since the Constitution confers on the district courts a general jurisdiction, and since this matter of compensation is a civil matter, let the applicant ignore the Industrial Commission and come directly to the district court. Let every shipper come before the courts directly instead of going before the Public

Service Commission. Let every applicant for a barber's or physician's or mortician's or dental, etc., license, step around the department of registration and come to the courts.

Moreover, if this argument is sound, the original jurisdiction in the district court to grant this right to change the place of taking water does not depend on the river being before the court for adjudication. It can be done at any time.

Furthermore, the prevailing opinion states:

"The Constitution having thus conferred on district courts a general jurisdiction no limitation may by construction be placed upon that jurisdiction *unless the lawmaking power clearly so indicates.*"

I ask, How could the Legislature indicate any clearer such limitation when it said,

"No change of point of diversion * * * shall be made except on the approval of an application * * * by the State Engineer"?

Should the Legislature have added,

"We mean what these words say"?

Having given my conception of what I consider to be the misconceptions of the prevailing opinion, I shall now consider the matter affirmatively. Partially repeating, section 100-3-3, R. S. 1933, states unequivocally that no change of the point of diversion, place or purpose of use shall be made except *upon approval of an application of the owner by the state engineer.* When the language of the statute is so plain and positive, I see no reason why we should read into it an exception, in effect, reading as follows:

"Except in cases where there is pending in the district court the matter of the general adjudication of the river system in regard to a portion of the waters of which it is desired to change the point of diversion, place or purpose of use, in which case the application for the change of point of diversion, place or purpose of use, may be made to the district court having jurisdiction of the said adjudication for the approval of said district court."

Such an exception is entirely unwarranted in the light of the wording of the statute above quoted. Besides, the

jurisdiction of the district court is not original, but purely derivative in the matter of initiating or changing water rights. By section 100-2-1 it is provided that the state engineer

"shall have general administrative supervision of the waters of the state, and of the * * * distribution thereof."

Section 100-3-14, states:

"In any case where a decision of the state engineer is involved any person aggrieved by such decision may within sixty days after notice thereof bring an action in any court of competent jurisdiction for a plenary review thereof."

The jurisdiction of the district court in matters such as this is derived from the right of review of a *decision* of the state engineer and not otherwise. The approval or withholding of approval by the state engineer is an action which must take place before the court can determine whether such action was arbitrary. In some cases, if not all, of a general adjudication of a river system, the matter initiates with the state engineer. Section 100-4-1. It appears that the action of the court operates on the "proposed determination of the state engineer," and all contests are based on his proposed determination. Sections 104-4-11 and 104-4-12. The action of the court, therefore, consists in determining on contests filed, whether the "proposed determination" is or is not correct. It may be doubted whether the court could ignore the proposed determination and go outside of it making a determination independent of the engineer's proposed determination. In short, the initiation of water rights, and any matter involving the appropriation, distribution, and apportionment, including the determination of existing rights and priorities, ordinarily originates in the office of the state engineer. There may be exceptions. The purpose is plain. That is the clearing house and recordation office for water data and status of water rights. Everyone may know that any water rights or changes in points

of diversion or place or manner of use or the status of a water right may be obtained in the office of the state engineer. Section 100-4-17 even provides that the clerk of the district court shall send one copy of the certificate issued to each person awarded a water right under a final decree to the state engineer. This is so his record may be complete. To my mind it will seriously interfere with the orderly administration of the water laws and of the state engineer's office to permit rights to be initiated in the district court pending a general adjudication of the river system. Usually such adjudications take a period of years. During all this time any owner of a water right may apply to the district court for a change in point of diversion or place or manner of use. And by the same token for any other right pertaining to such waters. And what provision is there for the state engineer's office to obtain a record of such application or the action of the court thereon?

Reverting again to section 100-3-3, which makes it mandatory to obtain the approval of the state engineer to an application to change the point of diversion, it will be noted that provision is made for the publication of notice of the application for the change. This is the method of serving "persons interested." This notice is given by the engineer on payment of costs by the applicant. Can the court exact the cost and give notice? There is no statutory authority for this. And if the court cannot do so, what sort of notice must it give? Personal notice would not suffice unless made on all the parties to the general adjudication suit who might be very numerous and mostly disinterested. Yet, no one knowing who might be affected by the change in the point of diversion, they would all be required to be given notice. On the other hand, the published notice prescribed to be given by the state engineer is notice to any and all persons interested. Such person must take notice through the publication.

I therefore conclude that in the matter of applying for a right permanently to change the point of diversion it must be initiated with the state engineer. How fares it with the

matter of effecting a temporary change? The instant case really involves the question as to whether the district court having jurisdiction of a proceeding for the adjudication of rights in a river system has jurisdiction to order a temporary change in the point of diversion on application by water users directly to such court when such change is not in the course of or for the purpose of adjusting, settling, adjudicating, or compromising in the general adjudication necessary or incidental thereto, or for carrying out any temporary or tentative adjudication or settlement of existing water rights. My consideration of the procedure to gain a permanent right was because of what was said in the prevailing opinion and to lay a basis for the solution of the above question. It is argued that there is a difference between an application for a permanent as distinguished from a temporary change. One involves the giving up of one right and the acquisition of another; the other merely an adjustment to meet conditions. One touches the substitution of one right for another; the other is a matter coming within the administration of the waters of the state. But the deduction is made that since a temporary change is to meet emergencies and does not involve the acquisition of a new right, the court having the general adjudication of the river can make the temporary change upon application to it for the same. Why so? Is it because it has before it the task of adjudicating all existing rights? What is the relationship between this task of adjudication and one of administering the waters of the state? A temporary change of diversion point as desired in the instant case has no relationship to an adjudication of existing rights. There is no question as to where the Cove River Irrigation Company may divert its water. It says: We do not deny that our existing right is to take our water from point A, but we want the right temporarily to take it from point Y. An owner requesting a temporary change in the point of diversion of water is not asking for the adjudication of an existing right for the purpose of compromising or settling a conflict in existing

rights or as necessary or incidental to such adjudication or in order to maintain a status quo or tentatively to settle a conflict pending final adjudication. Any power to effect such change unrelated to adjudication, if it exists in any one, is not by way of adjudication but by way of administration of the waters of the state. By section 100-2-1, it is provided that the state engineer

"shall have general administrative supervision of the waters of the state, and of the * * * distribution thereof."

We do not need to determine whether the courts in their plenary jurisdiction had at one time power to effect such a temporary change because the statute seems clear that it is vested at the present time in the state engineer. Nor is his right to administer the waters detracted from by the fact that the river system, some parts of which require administration because of drouth or emergency, is in the hands of the court for adjudication of *existing* rights in regard thereto. If the court in the process of adjudication or incidental thereto is required to make an order which in effect involves the administration of waters, such order will be paramount, but in this case the temporary change has no relationship to adjudication. It is said that unless the court is permitted summarily to deal with these necessitous situations, without giving the notices set out in section 100-3-3, great harm may ensue; that in every river system seasonal adjustments must be made depending upon the rainfalls and weather conditions, and that they must be made with dispatch. This may be granted. But the state engineer with his corps of experts and the water commissioners under his supervision would seem to be as well situated as the courts to make the investigation, do the consulting and make adjustments for emergency purposes. If any one feels aggrieved at the engineer's action, an appeal lies to the courts under section 100-3-14 and the delay will hardly be greater than that which may be involved where the district court acts upon the application initially with an appeal to this court. In this opinion we do

not intend to lay down any rules or make any general pronouncement as to what the state engineer may or may not do as part of his administrative functions. He has two types of powers: One to grant rights in regard to water on application after certain procedure, subject to a review of the courts; the other, a power of supervision and administration. The latter is not only over unappropriated waters of the state but over appropriated waters. The state has a reversionary interest in all appropriated waters. The user has a property right in the use of water as long as he uses it beneficially. But the state, by reason of its residual interest and because of the very importance of water to the economic life of the commonwealth and its fluid and transitory nature which gives rise to problems not encountered in other species of property, undertakes to regulate distribution and adjust and harmonize conflicts and difficulties, all by the way of administration and supervision of the waters of the state. It is not necessarily true that if in this matter of administration and supervision it becomes necessary to make temporary changes in diversion points that the same procedure need be followed as regards notices and hearings as is required for the acquisition of a right to divert permanently from a different point. The engineer may not be arbitrary, nor may he confer a benefit on or relieve one party from a disadvantageous situation to the detriment of others. But most times these adjustments will not entail intrusions on the rights of others or they may be made by agreement. In many cases minor changes will be made by the river commissioners without objection. In the more infrequent cases where the desired change involves an intrusion or claimed intrusion of another's rights, the place in which the objections to the change must center is the office of the state engineer. He then must act in his administrative capacity to adjust the dispute. An appeal lies from his decision, just as it lies from his decision in granting a right to permanently change a point of diversion. A temporary change of diversion does not involve the loss of the right to

divert from the old point and purports to be what its meaning implies, a change for a limited time. It would be made because of emergencies or to prevent losses and in the course of administration. At the same time it may be for a period sufficiently long or of a character which would entail injury or loss to others. If so, it could not be made without compensation or agreement any more than the granting of a permanent right.

But jurisdiction of the courts to decide questions of whether there was loss to others and the amount of such loss is derived only from a review of the action or decision of the state engineer. This is true whether the application is for a temporary or permanent change. The district court has no original jurisdiction over such application whether or not it is entertaining jurisdiction of the general adjudication of the river system, unless the application is in the course of arriving at a decision regarding existing rights or incidental or necessary or reasonably related to such adjudication or as part of the modus operandi or means of adjusting or resolving conflicting or doubtful claims. In order for the court to decree a change in the point of diversion its action must have its genesis in contest and must be made as part of the settlement of a contest as to existing rights.

It appears to me that the present application for a temporary change of point of diversion does not come within this category. Therefore, the district court had no original jurisdiction and the alternative writ of prohibition heretofore issued should be made permanent.