Argued at Pendleton October 29; modified December 18, 1945; rehearing denied February 5, 1946

## TUDOR *v.* JACA ET AL.
(164 P. (2d) 680, 165 P. (2d) 770)

128

Before BELT, Chief Justice, and ROSSMAN, BAILEY, LUSK and HAY, Associate Justices.

*George Brewster,* of Redmond, and George Cochran, of La Grande (Cunning & Brewster, of Redmond, and Cochran & Eberhard, of La Grande, on the brief), for appellant.

*Charles Swan* and *Robert D. Lytle,* both of Vale, for respondents.

## HAY, J.

This is a suit to quiet title in plaintiff to the use of waters of Crooked Creek, a tributary of the Owyhee River. It was commenced in 1938. Issue was joined upon the complaint and upon counterclaims by the defendants under which affirmative relief was sought. A hearing was held before the late Judge Robert M. Duncan, wherein voluminous testimony was taken and numerous documentary exhibits were received. Shortly thereafter, Judge Duncan died without having rendered a decision, and by agreement of the parties the case was submitted, upon the record and evidence, to Judge R. J. Green, who in due course entered a decree determining the rights of the parties. The plaintiff has appealed to this court from the whole of such decree.

The principal defendant, Juan Jaca, died pendente lite, and the administrator of his estate was substituted in his stead. The Jaca lands were thereafter acquired by S. E. Henderson, and, subsequent to the hearing but before the case was decided, he was joined as a defendant. Although there are other respondents, we shall, in the interests of clarity, refer to Mr. Henderson as "the respondent".

Crooked Creek flows from a large spring which rises upon appellant's land and runs in a general northeasterly direction. It is augmented by some small springs which also rise on appellant's land. Leaving that land, it traverses a tract called the Loveland field, formerly owned by one Anderson Loveland and now owned by respondent. Thereafter, it proceeds through a canyon for upward of a mile, and enters respondent's main ranch property.

The relative rights to the use of the waters of this stream were involved in early litigation between pred-

ecessors in interest of the respective parties hereto
*Seaweard v. Duncan,* 47 Or. 640, 84 P. 1043; *Seaweard
v. Pacific Livestock Co.,* 49 Or. 157, 88 P. 963. The
last-mentioned case was instituted by two of respondent's predecessors in title, J. H. Seaweard and Anderson Loveland, against appellant's predecessor, Pacific
Livestock Company, to enjoin the latter from raising
the waters of the large spring by means of a dam or
dike, for the purpose of diverting them into a high-line ditch which the Company was then constructing,
and applying them to the irrigation of land not theretofore irrigated. The decree gave the Company a
prior right to the use of 100 inches of water, miner's
measurement, under six-inch pressure, for irrigation
purposes, as appurtenant to the E½ E½ and SW¼
NE¼, section 22, and the S½ and the SE¼ NW¼, section 14, T. 33 S., R. 39 E., W.M., with a date of relative
priority as of 1885. The other parties to the suit were
determined to have secondary rights as follows: Seaweard, 120 miner's inches for the irrigation of the
SE¼ NE¼, N½ SE¼, SW¼ SE¼, section 4, T. 33 S.,
R. 40 E.; Loveland, 150 miner's inches for the irrigation of the NW¼ of section 20, and all of section 17,
T. 33 S., R. 40 E.; defendant Pearl Duncan, 80 miner's
inches for the irrigation of the N½ NE¼ and SW¼
NE¼, section 4, T. 33 S., R. 40 E., W.M.

In 1919, an adjudication of the relative rights to
the use of the waters of the Owyhee River and its
tributaries, under the water code of 1909 (section 116-801, et seq., O. C. L. A.) was initiated, and in that proceeding claims were filed by Pacific Livestock Company, predecessor in interest of appellant, and by
James P. Anderson, a predecessor in interest of respondent. Anderson contested the claim of Pacific

Livestock Company, and the contest was settled by written stipulation of the parties. The stipulation reads, in part, as follows:

"Whereas the relative rights of these parties and their predecessors in interest have been, to a large extent, determined by the Supreme Court of the State of Oregon in that certain case entitled J. H. Seaweard, et al., against the Pacific Livestock Company, reported in 49 Oregon Reports, at page 157, and the case of Seaweard against Duncan, reported in 47 Oregon Reports, at page 640, and in which first mentioned case the Court made a final Decree awarding to the Pacific Livestock Company the right to the use of 100 miner's inches of water, measured under a six-inch pressure, to be taken from said Crooked Creek, said right to be prior in time to the other users mentioned in said Decree, and the Court made a Decree in awarding to J. H. Seaweard 120 inches, to Anderson Loveland 150 inches, and to P. O. Duncan, 80 inches, and

"Whereas, the said James P. Anderson has succeeded to the rights of the said Seaweard, Loveland and Duncan, and is now the owner of the lands and water rights of said parties, and these parties are now willing that such Decree should control the amount of water awarded to each of the parties herein:

"NOW, THEREFORE, it is agreed that the State Engineer's office, in its Findings and Decree to be made and entered in this matter, should find that the Pacific Livestock Company shall have a prior right to the use of the water of Crooked Creek to the extent of 100 miner's inches, measured under a six inch pressure, to be used as it sees fit on the lands of said company in the Southwest Quarter and the Southeast Quarter of Section 14, and its lands in the Northeast quarter of Section 22, Township 33, S. R. 39 E. W.M., and that the said James P. Anderson shall be entitled to the use of

350 miner's inches of water, measured under a six inch pressure, for the irrigation of his lands in sections 20, 17, and 4 in Township 33, South, Range 40 E. W.M.''

The State Engineer, in his findings of fact and order of determination, embodied the foregoing stipulation, with the following proviso added:

"In the administration of the water rights allowed herein to the parties to this contest, and their successors in interest, the water master shall distribute the water as between said parties in accordance with the terms of said stipulation and the decree mentioned therein, in so far as practicable; provided, that the quantity of water used by said parties shall be governed by Paragraph 24 hereof; and provided further, that as against other water users the rights of said parties shall be governed by their dates of priority as set forth in the tabulation hereinafter contained."

Paragraph 24, above referred to, fixed the duty of water and the irrigation season as running from April first to October fifteenth. We quote:

"The amount of water diverted from main Owyhee River for irrigation purposes shall not exceed one acre foot per acre during any calendar month prior to June 1st, and three-fourths acre foot per acre during any calendar month after June 1st, of each year; and the total quantity diverted during the irrigation season from April 1st to October 15th, shall not exceed three acre feet per acre.

"The claimants from all tributaries of the Owyhee River show that in the early run-off of the waters they have always flooded their irrigated lands with great quantities of water, and that this system is necessary to insure a crop, and that such use of water of said stream through this period deprives no one of ample water, as there is always a surplus and some to spare until June 1 or 10 of

each year, and in addition to properly supply the needed use, the effect is to reservoir this water in the saturated ground, thereby holding up the run-off of the stream for a longer period, and adding to the late waters in the Owyhee River.

"The amount of water diverted from the tributaries of Owyhee River for irrigation purposes shall be limited to two acre feet per acre prior to June 1 of each year, and thereafter, during each irrigation season, there shall not be diverted for irrigation purposes water in excess of one-half acre foot per acre during any calendar month of each year; * * *."

The findings and order of determination were approved and adopted by decree of the Circuit Court, and no appeal was taken by either Pacific Livestock Company or Anderson.

■■ Appellant says that *Seweard v. Pacific Livestock Company* and *Seaweard v. Duncan* did no more than establish the relative priorities of the parties, as neither of them had completed his appropriation by having brought under irrigation all of the land included within the scope of his original project. Thus, in Seaweard v. Duncan, this court noted that Duncan had cultivated about eighty acres "and there yet remains about an equal amount of irrigable land which he intended to put into cultivation." So, in *Seaweard v. Pacific Livestock Company,* while the extent of the appropriation of each party, in miner's inches, was adjudicated, the exact area of irrigated land was not determined. Where an appropriator of water has conceived a plan for the development of his land, under which he intends eventually to place under irrigation a considerable area, the law does not contemplate that he shall complete his appropriation in one year or season, but allows him a reasonable time for that pur-

pose commensurate with "the magnitude of the undertaking and the natural obstacles to be encountered in executing the design." *Seaweard v. Pacific Livestock Company,* supra; *Nevada Ditch Company v. Bennett,* 30 Or. 59, 45 P. 472, 60 Am. St. Rep. 777. Appellant contends that the decree in *Seaweard v. Pacific Livestock Company* gave her predecessor, Pacific Livestock Company, "special permission" to irrigate other lands than those which had been irrigated up to the date of the decree. Hence, she says, Pacific Livestock Company had two distinct rights: first, to the use of 100 miner's inches as a first right, and second, to the use of any additional water that might be required, subject and subsequent to the Seaweard and Loveland rights. This is not our understanding of the effect of the decree. This court's opinion shows that the Pacific Livestock Company's rights were initiated in 1886; that the area of arable land was constantly enlarged from 1886 until 1899, but that, from that time until 1904, no attempt was made to prepare any new land for cultivation "whereby a purpose to expand the appropriation might have been disclosed to persons who desired to make a subsequent use of the water." The delay was held to have been without excuse and unreasonable, and the right of the Pacific Livestock Company was limited to the appropriation of 100 miner's inches initiated by its predecessors in 1886. To this appropriation, the appropriations of Seaweard and Loveland were decreed to be secondary. Any appropriation that may have been initiated by Pacific Livestock Company, or by its successor, appellant herein, in or after 1904, is, therefore, subsequent and inferior to the Seaweard and Loveland appropriations respectively.

■ The Circuit Court, in an adjudication of water rights under the water code, is a court of general jurisdiction, and its decrees are *res judicata* and conclusive upon the parties and their privies. *In re Willow Creek,* 74 Or. 592, 617, 144 P. 505, 146 P. 475; *Abel v. Mack,* 131 Or. 586, 283 P. 8; section 116-819, O. C. L. A. See also *Pacific Livestock Company v. Lewis,* 241 U. S. 440, 36 S. Ct. 637, 60 L. Ed. 1084; *California-Oregon Power Co. v. Beaver Portland Cement Co.,* 73 F. (2d) 555 (Aff. 295 U. S. 142, 55 S. Ct. 725, 79 L. Ed. 1356); Weil, Water Rights, 3 ed., section 1233; Kinney, Irrigation, 2 ed., section 1583. No appeal from the Circuit Court's decree having been taken by either Pacific Livestock Company or Anderson, it must be regarded as conclusive upon them and upon their privies.

■ The Pacific Livestock Company's claim in the Owyhee adjudication covered 244.5 acres, with an asserted date of relative priority of the year 1885. This claim was based specifically upon the decree in *Seaweard v. Pacific Livestock Company* and upon alleged continuous adverse use since 1885. The Owyhee decree indicates that the area irrigated under the original appropriation was 119.9 acres, which would make the adverse use claim applicable to 124.6 acres. The decree, in its tabulation of rights, gave the Livestock Company a priority date of 1885 for 244.5 acres. However, it adopted the stipulation which settled the rights of the parties in accordance with the *Seaweard v. Pacific Livestock Company* decree, which, at the decreed rate of diversion of one miner's inch per acre, gave the Company an 1885 priority for only 100 acres (apparently should have been 119.9 acres). Thereby the decree involved itself in a patent contradiction. The lower court's decree herein specifically adopted

the decree in *Seaweard v. Pacific Livestock Company*. It is our duty to interpret the Owyhee decree so as to express the obvious intention of the court therein to give effect to the *Seaweard v. Pacific Livestock Company* decree. 30 Am. Jur., Judgments, section 31; *Union P. R. Co. v. Mason City & Ft. D. R. Co.*, 222 U. S. 237, 56 L. Ed. 180, 32 S. Ct. 86; *Ballew v. Denny*, 296 Ky., 368, 177 S. W. (2d) 152, 150 A. L. R. 770.

■ Appellant contends that, after the Loveland and Seaweard rights are filled, her secondary rights should be considered as next in priority, superior to the Duncan right. We do not agree. The opinion of this court in *Seaweard v. Pacific Livestock Company* shows that the Company's predecessors were, until 1899, constantly enlarging the area of their arable land, but that thereafter, until 1904, no attempt whatever to prepare any new land for cultivation was made. The right of the Pacific Livestock Company was, therefore, limited to the appropriation made by its predecessors, which was 100 miner's inches. The appellant's claim of adverse use of water dating from the year 1885 is, therefore, untenable, and appellant is estopped from claiming any earlier date than 1904 for that part of her 244.5 acres not covered by her prior 100 miner's inches right. Whether or not the Duncan right was lawfully adjudicated in *Seaweard v. Pacific Livestock Company*, it was recognized and affirmed by the Company in its stipulation with Anderson in the Owyhee decree, and by that decree became *res judicata*.

A secondary right to the use of 275 inches of water is awarded to respondent by the decree appealed from. Appellant complains that this should not have been awarded in gross, as different priorities are involved. We think that the court intended to give effect to the

different priorities, but the decree will be modified so as to clarify any ambiguity in that respect.

■ Appellant holds a permit (No. 13566) from the State Engineer, dated June 12, 1939, to use waters of Crooked Creek for the irrigation of certain lands. She believes that the decree should have specifically recognized her inchoate rights under such permit, and, in our opinion, it should have done so.

■ The decree did provide that no water should be diverted to apply upon appellant's 1939 permit rights except when the flow of the stream should exceed ten second feet, and in any event not until appellant's prior right to 100 inches, respondent's secondary rights to 275 inches, and appellant's secondary right on 144.5 acres, "have all been completely filled and satisfied". This provision, in our opinion, was error. It is true that the rights prior to appellant's permit rights approximate nearly ten second feet, but it is the duty of prior appropriators so to use the water as to effect the highest duty of water that can reasonably be brought about. A situation might exist wherein, although the stream flow were less than ten second feet, a surplus might be available for application toward appellant's permit rights. (For example, diversion of water might have been suspended temporarily under one or more of the prior rights.) In such a case, of course, any surplus water would be available to subsequent appropriators in order. The court, having established the priorities, should not attempt to anticipate exigencies which may arise in administration of the decree, but should leave such matters to the water master, whose duty it is "to preserve the priorities and the quantities consistently with the highest duty of

water, as applied to all concerned." *Nault v. Palmer*, 96 Or. 538, 190 P. 346.

■ Appellant complains that she should not have been enjoined from changing the place or manner of use of water so as to reduce the flow of the stream below what it would be under diversion of her 100 miner's inches primary right upon the land to which it was originally appurtenant. This provision of the decree was taken from the decree in *Seaweard v. Pacific Livestock Company*. In that case, the Company not only was confirmed in its 100 miner's inches prior right, but moreover it was permitted, with certain restrictions, to change the place of use. Counsel for appellant, in their brief, argue that appellant's prior right is still appurtenant to the original land, and in fact it does not appear that any change in place of use under that right was effected. Under those circumstances, the injunction complained of was unnecessary and improper, and the decree will be modified by eliminating it. If any change in place of use is hereafter desired, appellant must follow the statutory procedure provided in such cases.

The lower court, following the findings of fact entered in *Seaweard v. Pacific Livestock Company*, fixed the duty of water at a continuous flow of one miner's inch, six-inch pressure (or 1/40 cfs) per acre. The Owyhee decree, as shown above, fixed the duty of water in acre feet at two acre feet per acre per month from April first to June first, and one-half acre foot per acre per month during the remainder of the irrigation season.

■ The elements of an appropriation of water, as stated by the Utah court, are: "(a) Quantity of water appropriated; (b) time, period, or season when

the right to the use exists; (c) the place upon the stream at which the right of diversion attaches; (d) the nature of the use or the purpose to which the right of use applies, such as irrigation, domestic use, culinary use, commercial use, or otherwise; (e) the place where the right of use may be applied; (f) the priority date of appropriation or right as related to other rights and priorities". *Rocky Ford Canal Co. v. Cox,* 92 Utah, 148, 59 P. (2d) 935. The amount of water which has been applied to a beneficial use is, of course, a measure of the quantity of the appropriation. Waste of water must not be practised. Wasteful methods common among the early settlers do not establish a vested right to their continuance. Such methods were only a privilege, "permitted merely because it could be exercised without substantial injury to any one". *Hough v. Porter,* 51 Or. 318, 95 P. 732, 102 P. 728. The use must not only be beneficial to the lands of the appropriator, but it must also be reasonable in relation to the reasonable requirements of subsequent appropriators. *Bolter v. Garrett,* 44 Or. 304, 75 P. 142. In general adjudications of relative rights to the use of the waters of a stream system, it is evident that the duty of water and the duration of the irrigation season are matters which must be considered and determined, and this has been the practice in Oregon ever since the adoption of the water code in 1909.

■ "* * * The best methods for the application of water to the land should be used. No person should be allowed more water than is necessary when applied by a proper system; this, in order that a large area may be made productive by the extended application of such water. All the rights adjudicated in these proceedings are subject to this rule."

*In re Willow Creek,* supra (74 Or. 592, 622, 144 P. 505, 146 P. 475.)

■ "It is a duty of the court in adjudicating water rights to suppress all wasting of water and the court may go further and declare what shall constitute the economic use of the water and to fix its proper duty by a decree awarding the use of a certain amount of water for that purpose. * * *"

*In re Water Rights of Deschutes River,* 134 Or. 623, 666, 286 P. 563, 290 P. 1049.

■ "The various estimates made by claimants in their statements and proofs of claim would naturally vary to quite an extent, and where a claimant states the definite amount of water claimed to be appropriated in second feet continuous flow, and simply makes an estimate of the duty of water, we think they should be all taken together with the other evidence of experiments and studies, and that the court should fix the duty of water practically irrespective of the estimates of the elements. * * *"

*In re Water Rights of Deschutes River,* 148 Or. 389, 394, 36 P. (2d) 585.

Respondent maintains that the duty of water was fixed by the decree in *Seaweard v. Pacific Livestock Company,* and that it may be changed only in a suit brought specifically for that purpose. *Claypool v. O'Neill,* 65 Or. 511, 133 P. 349, was an appeal from a decree adjudicating the relative rights to the use of the waters of a stream. The determination by the State Water Board, in fixing the duty of water, had apparently ignored a former decree, which had awarded one of the claimants the right to the use of 100 miner's inches of water. The Circuit Court reversed the determination of the Board, and presumably sustained the claim of the water user. The decree of the Circuit Court was reversed by this court. We held that it was error to have awarded the water user "the continuous

and exclusive use of 100 inches of water without reference to his needs,'' and modified the findings of the Water Board to the extent of determining that the water user was ''entitled to a prior right of 2.5 second-feet (100 miner's inches) of the water when actually needed upon his lands.''

■■ In the Owyhee adjudication neither the State Engineer nor the Court ignored the decree in *Seaweard v. Pacific Livestock Company.* On the contrary, they gave effect to it ''so far as practicable'', and indicated their interpretation of its practicability by decreeing that the quantity of water used by the parties should be governed by the general duty of water as fixed by the decree. No exceptions were filed by the parties affected, nor was any appeal taken from the decree. We do not consider that the establishment of a duty of water by the Court in the Owyhee adjudication deprived respondent of any vested right. There was no interference with relative priorities. The duty of water was arrived at after scientific studies by the State Engineer, and was based upon beneficial use. One miner's inch per acre, six-inch pressure, continuous flow, upon respondent's lands, would result in a use for irrigation purposes of nine acre-feet per acre per season. No such absurd result could have been intended by the court in *Seaweard v. Pacific Livestock Company.* What was intended was, of course, as in *Claypool v. O'Neill,* supra (65 Or. 511, 133 P. 349) that respondent's predecessors were entitled to the use upon their lands of one miner's inch per acre, continuous flow, or so much thereof as might reasonably be necessary for irrigation purposes. The duty of water fixed by the Owyhee decree having been based upon beneficial use, it is not perceived wherein this conflicted with *Seaweard v. Pacific Livestock Company.* In so

far as the Owyhee decree places a limit upon the amount which might be diverted under a one-inch per acre continuous flow, this court has approved such procedure. *In re North Powder River,* 75 Or. 83, 144 P. 485, 146 P. 475.

■ In any event, we are of the opinion that the duty of water, as fixed by the Owyhee decree, is *res judicata.* The court had jurisdiction of the persons of the predecessors in interest of the parties hereto, and of the water rights involved, and was exercising the powers of a court in equity. Even if we assume, for the sake of argument, that the decree was erroneous on the facts or on the law, nevertheless the principles of *res judicata* are applicable. Restatement, Judgments, section 2. The lower court's decree, therefore, will be further modified by substituting, in place of the duty of water and duration of irrigation season fixed therein, the provisions of the Owyhee decree in those respects.

■ The decree appealed from provides that waters stored by respondent in a certain reservoir shall be applied to the lands for which a storage right permit was secured. Appellant maintains that the court erred in not decreeing the manner in which such stored waters shall be used, and in not fixing the permissible time of storage and the priority of stored water rights in relation to appellant's rights.

The reservoir is situated in the bed of the stream, below the Loveland field and above the Seaweard and Duncan fields. It is downstream from any point of diversion used by appellant. It was constructed under a permit issued by the State Engineer on December 9, 1914. Proof of completion was made in 1918, and, on February 3, 1919, the State Water Board issued a

certificate of water right for the storage of not to exceed 2990 acre feet. Respondent's predecessor secured a permit to apply the stored water to the irrigation of certain described lands. Having made proof of completion of the project, he received, on February 3, 1919, a certificate of water right for the irrigation of a total of 152 acres, in respect of forty acres of which a stream-flow irrigation right was already appurtenant. The lower court, in the present suit, decreed that the right to irrigate 38.8 acres of such land had been abandoned by non-use. It found further that storage water had been applied to a beneficial use in the irrigation of 73.2 acres, which leaves forty acres of the original 152 acres unaccounted for. The decree made no mention of the storage right lands whatever except with respect to those upon which the court found there had been an abandonment of use. We are obliged, therefore, to fall back upon the certificate of water right to supplement the court's findings, and we hold that respondent Henderson has a right to store water in his reservoir not exceeding 2990 acre feet, for the irrigation of 113.2 acres of land.

We agree with appellant that the amount of water which can be put to a beneficial use in the irrigation of 113.2 acres of land in one season, with a sufficient margin to take care of normal storage and transportation losses, is all that respondent is entitled to store in his reservoir in any one year, the flow of the stream being sufficiently constant to obviate the necessity for carrying over a reserve against a dry year. It appears from the evidence that heretofore respondent's predecessors have used stored water indiscriminately, not only upon lands having a storage permit right, but also upon lands having only a decreed stream flow

right. The reservoir is emptied by about July first in each year and thereafter respondent's predecessors have been in the habit of using stream-flow rights for the irrigation of lands having only a permit right. The water is impounded after the end of the irrigation season, and the reservoir can be filled to capacity in about seventy days.

■■ In view of the fact that the reservoir is filled during the non-irrigation season, and is full to the extent of its usable capacity when the next irrigation season begins, it is apparent that any waters thereafter flowing into it should be considered as part of the normal flow of the stream. Moreover, any water retained in the reservoir, in addition to such amount as it may be reasonable, with due allowance for normal storage and transportation losses, to impound for the irrigation of 113.2 acres of land at a duty of water of one cfs for eighty acres, or 4½ acre feet per acre, as fixed by the respondent's storage water irrigation permit, should be considered as ordinary stream flow. We construe the decree as restricting the impounded waters to use upon the lands which have a storage-irrigation permit, which would have the effect of treating excessive storage as stream flow. Respondent will not be permitted to impound water in the reservoir during the irrigation season. Impounded water must not be used upon lands having only a stream-flow right, but, if any such water is so used, it must be charged against the stream-flow right.

■ Appellant complains because the lower court gave judgment for $500 damages in favor of defendant Felix Jaca, as administrator of the estate of Juan Jaca, deceased. She says that, on the death of Juan Jaca, and the sale of his land to Henderson, Jaca's administrator retained no interest in the relief sought

in the suit, save for his intestate's claim against plaintiff for compensatory damages. Such a claim, appellant argues, is cognizable only in an action at law. She suggests, therefore, that the court, sitting as a court of equity, lost jurisdiction of the incidental claim for damages.

The record discloses that the hearing before Judge Duncan was opened on February 13th and continued through February 24, 1941. The defendant Juan Jaca did not die until March 15, 1942. His cause of action for damages survived to, and the suit was revived in his personal representative. Sections 1-311, 8-902, O. C. L. A. The claim for damages was originally properly joined with Juan Jaca's cross-complaint in equity. The change of circumstances of ownership did not oust the court of jurisdiction of such claim, especially since it did not take place until after the hearing. In our opinion, the court followed the proper equitable procedure by retaining jurisdiction and awarding damages, rather than remanding the damage claim for re-trial at law. 19 Am. Jur., Equity, section 126; *Phez Company v. Salem Fruit Union,* 103 Or. 514, 201 P. 222, 25 A. L. R. 1090.

■ Appellant contends that, in any event, there is no evidence to support a decree for damages. It is true that the testimony with reference to a shortage of water came altogether from Juan Jaca and Joaquin Jaca, and that it did not include any specific measurements of water. The appellant herself, however, testified that, from 1926 to 1938, she had irrigated up to 648 acres, and her husband testified that since 1925 they have irrigated altogether about 600 acres. Joaquin Jaca testified with reference to the amount of crop damages and loss which his father, Juan, suffered

through deprivation of water. The evidence indicates that on a number of occasions when there was an insufficiency of water for the irrigation of the lower lands, complaint was made to appellant or to her husband, and that usually, upon such complaint, additional water was turned down-stream by appellant for brief periods. Sometimes, under those conditions, Jaca would receive for a short time as much as three hundred inches of water. The fact that so much water was available indicates that appellant was using more water than her prior rights justified, to the detriment of Jaca's rights. It is apparent that to permit Jaca to use, for short periods, a greater head of water than that to which he was entitled, would not compensate him for losses incident to the drying up of his land through his being denied the use of a constant head of water to the extent to which his rights entitled him. In our opinion, the evidence of damages was ample to justify the small sum awarded by the court.

▮▮▮▮▮▮ Error is assigned in that the decree did not hold that respondent had lost the right to irrigate the Loveland field, either by abandonment or by forfeiture, through failure to use water thereon for more than five years. Section 116-437, O. C. L. A. Alternatively, it is contended that the evidence indicates that the Loveland field was irrigated by Jaca only in April and May of each year, and that, therefore, after May in each year, the water is subject to use by the appropriator next in order of priority. *Davis v. Chamberlain,* 51 Or. 304, 98 P. 154; *In re North Powder River,* supra (75 Or. 83, 144 P. 485, 146 P. 475). It is asserted that, for more than twenty-five years prior to the commencement of this suit, no water has been used on the Loveland field after June first of any year. There was evidence that all of the land under the ditches in this field was irri-

gated for pasturage from 1929 to and including 1931. In 1932, the field was not irrigated at all, owing to lack of water, although some water was turned down by appellant in July in response to a complaint. Because of water shortage, only one irrigation was made in 1933, and again, for about a week, water was turned down on complaint. A similar situation obtained in 1934, when the field was irrigated until water failed in the latter part of April or first part of May. Protest to appellant resulted in receipt of a little more water. For 1935, 1936, 1937 and 1938, the story was about the same. During much of the time, because of the fact that appellant was using water greatly in excess of her rights, Jaca chose to use all of an insufficient supply for the irrigation of crops upon his lower ranch, to the detriment of the Loveland field which was used as pasture land only. It would appear that the choice was forced upon him by appellant's overuse of water. Abandonment, as applied to an appropriation of water, is an intentional relinquishment of a known right. *Pringle Falls Electric Power and Water Co. v. Patterson,* 65 Or. 474, 128 P. 820, 132 P. 527. The evidence, in our opinion, does not indicate that there was ever any intention to abandon the Loveland field rights, in so far as the lower court confirmed them. Forfeiture is "the involuntary or forced loss of the (water) right, caused by the failure of the appropriator or owner to do or perform some act required by the statute." Kinney, Irrigation, 2 ed., section 1118. In our opinion, the acts of Juan Jaca, in persistently demanding that appellant release water for his use, and appellant's compliance with such demands until her refusal in 1938, (suit was instituted December 31, 1938) repel any idea of either abandonment or forfeiture.

■ Appellant asserts not only that the right to use water for the irrigation of the Loveland field has been lost to respondent, but that appellant has acquired a prior right as against him by adverse use for more than the statutory period of prescription. It is a debatable question, under the water code, whether, subsequent to 1909, an appropriation of water can be initiated by adverse use, or in any other manner than under the statutory procedure. Section 116-419, et seq., O. C. L. A. Such procedure is declared to be exclusive. Section 116-402, O. C. L. A. It is unnecessary for us to discuss this question, however. We have held that the Loveland field water rights were not lost either by abandonment or by forfeiture. It follows that appellant could not have acquired a priority over such rights by adverse use.

The decree of the lower court will be modified in the following particulars:

(a) Appellant, Agnes Tudor, shall be decreed to be entitled to the use of the waters of Crooked Creek, with dates of relative priority as undernoted, for the irrigation of her lands described as follows:

| Date of Priority | Name of Ditch | Stream | Description of Land |
|---|---|---|---|
| 1885 | Konehinke Ditches | Crooked Creek and Crooked Creek Springs | 8.5 acres in NE¼ SW¼<br>5.1 acres in NW¼ SW¼<br>27.6 acres in SW¼ SW¼<br>28.5 acres in SE¼ SW¼ Section 14<br>23.2 acres in NE¼ NE¼<br>27 acres in SE¼ NE¼ Section 22<br>T. 33 S., R. 39 E., W.M. |

Total 119.9 acres

1904 Konehinke Crooked 1.5 acres in NE¼ SE¼
 Ditches Creek 11.3 acres in NW¼ SE¼
 and 34.1 acres in SW¼ SE¼
 High 1.3 acres in SE¼ SE¼
 Line Section 14
 Ditch 22.5 acres in NE¼ SE¼
 3.5 acres in NW¼ SE¼
 12.9 acres in SW¼ SE¼
 15.3 acres in SE¼ SE¼
 Section 15
 7.5 acres in NW¼ NE¼
 1.2 acres in SW¼ NE¼
 Section 22
 13.5 acres in NW¼ NE¼
 Section 23
 T. 33 S., R. 39 E., W.M.
 Total 124.6 acres

(b) Respondent S. E. Henderson shall be decreed to be entitled to the use of the waters of Crooked Creek, with dates of relative priority as undernoted, for the irrigation of his lands described as follows:

| Date of Priority | Name of Ditch | Stream | Description of Land |
|---|---|---|---|
| 1886 | Loveland | Crooked Creek | 4 acres in NE¼ NW¼ |
| | | | 3 acres in NW¼ NW¼ |
| | | | 0.6 acres in SW¼ NW¼ |
| | | | Section 20 |
| | | | 20 acres in NE¼ SW¼ |
| | | | 15 acres in SE¼ SW¼ |
| | | | Section 17 |
| | | | . T. 33 S., R. 40 E., W.M. |
| | | | Total 42.6 acres |
| 1895 | Duncan | Crooked Creek | 40 acres in SE¼ NE¼ |
| | | | 31 acres in NE¼ SE¼ |
| | | | 29.6 acres in NW¼ SE¼ |
| | | | 16.2 acres in SW¼ SE¼ |
| | | | Section 4 |
| | | | T. 33 S., R. 40 E., W.M. |
| | | | Total 116.8 acres |

| 1902 | Duncan | Crooked Creek | 26.7 acres in NE¼ NE¼ |
|---|---|---|---|

1902 Duncan Crooked 26.7 acres in NE¼ NE¼
 Creek 17.6 acres in NW¼ NE¼
 19 acres in SW¼ NE¼
 Section 4
 T. 33 S., R. 40 E., W.M.
 Total 63.3 acres

1914 Anderson Crooked 20.8 acres in SE¼ NW¼
 Reservoir Creek 30 acres in SW¼ NW¼
 22.4 acres in NW¼ SW¼
(Reservoir Permit No. Section 3
320. Certificate of Water *31 acres in NE¼ SE¼
Right dated Feb. 3, 1919, * 9 acres in SE¼ NE¼
recorded in Vol. 3, p. Section 4
2177, State Record of T. 33 S., R. 40 E., W.M.
Water Right Certif- Total 113.2 acres
icates.)

(* These lands have stream-flow rights, and the storage right is supplemental thereto.)

(c) All reference to duty of water, as expressed in terms of miner's inches, will be eliminated. The following paragraph will be added to the decree:

That paragraph 24 of the Findings and Order of Determination of the State Engineer of Oregon, as adopted and confirmed by decree of this court, dated and entered on the 7th day of July, 1926, in the proceeding entitled, In the Matter of the Adjudication of the Relative Rights to the Use of the Waters of Owyhee River and its Tributaries, a Tributary of Snake River, shall govern all of the above-mentioned stream-flow rights in respect of duty of water, rate of diversion, acre feet limitation, and duration of irrigation season.

(d) Paragraph 4 of the decree, which prohibits diversion of waters to be applied on appellant's 1930

permit rights except when the stream flow shall exceed ten second feet, shall be eliminated.

(e) Paragraph 5, which provisionally enjoins plaintiff from changing the place of use under her primary rights, shall be eliminated.

(f) The following paragraph shall be added to the decree:

Respondent may impound in the Anderson Reservoir, during the non-irrigation season, sufficient water, making due allowance for normal losses incident to storage and to transportation, for the irrigation of 113.2 acres of land at a duty of water of one cubic foot per second for 80 acres, or 4½ acre feet per acre. Such impounded water shall be used only upon land having a storage-irrigation right. If any water is impounded or stored in excess of the foregoing limitations, such excess shall be considered as being part of the stream flow, and, if used upon land having only a stream-flow right, shall be charged against the stream-flow right appurtenant to the land upon which it is so used. The reservoir may be filled to its practical capacity, within the limits above mentioned, only once in each non-irrigation season, and neither the whole nor any portion of the stream flow during the irrigation season may be added to the water impounded in the reservoir, or otherwise impounded therein.

(g) The following paragraph shall be added:

Plaintiff, Agnes Tudor, is the holder of Permit No. 13566, issued by the State Engineer of Oregon, dated June 12, 1939, for the appropriation of 7.5 cubic feet per second of the waters of Crooked Creek for irrigation purposes, subject to final proof of completion of such appropriation and the issuance of a water right certificate thereon. In all other

respects, the decree is affirmed, without costs to any party.

Petition for rehearing denied February 5, 1946

## ON PETITION FOR REHEARING
(165 P. (2d) 770)

HAY, J.

In a petition for a rehearing of this case, appellant has directed our attention to certain portions of our opinion wherein, she contends, error was committed.

It is insisted that the water right certificate which was issued to appellant's predecessor, Pacific Livestock Company, pursuant to the circuit court's decree in the Owyhee adjudication, is, by force of the statute (section 116-436, O. C. L. A.) "conclusive evidence of the priority and extent of the appropriation therein described in any suit, action or other proceeding * * *", except where the appropriation has been abandoned. The Owyhee decree, as stated in our opinion, gave Pacific Livestock Company a right to the use of the waters of Crooked Creek and Crooked Creek springs for the irrigation of 244.5 acres of land, with a priority date of 1885, but adopted a stipulation between the Livestock Company and respondent's predecessor, James P. Anderson, the effect of which was to limit the Livestock Company's 1885 priority to 119.9 acres. Appellant contends that the court, in its construction of the Owyhee decree, has destroyed "the sanctity of the water right certificate", and asserts that the certificate, whether correct or erroneous, has become final and is binding upon the whole world.

There can be no doubt but that a water right certificate must be accorded the evidentiary effect which the statute prescribes. The certificate in this

case, however, is based specifically upon the decree in the Owyhee adjudication, and, in respect of the water right certified, contains the following proviso: "And said right shall be subject to all other conditions and limitations contained in said decree." In considering the effect of the certificate as evidence, therefore, the conditions and limitations contained in the decree must be regarded as embodied therein, and the certificate is subject to any modification that may result from a judicial interpretation of any ambiguity in such conditions or limitations. Appellant's criticism of the court's opinion in this respect cannot be sustained.

 Appellant argues that the decree in *Seaweard v. Pacific Livestock Company* provided that the Livestock Company "could use 100 inches of water as it saw fit on any of its lands". The decree recited that the Company owned the E½ E½ and the SW¼ NE¼ of section 22, and the S½ and the SE¼ NW¼ of section 14, T. 33 S., R. 39 E., W.M. As appurtenant to such lands, it awarded the Company the use of "the first one hundred inches * * * miners measurement * * * of the waters of Crooked Creek, for domestic use and for the irrigation of said premises, which amount of water * * * in lieu of being used upon said lands under the ditches constructed prior to 1903, may be applied in the irrigation of any of the lands above described * * *". The decree, therefore, made the Livestock Company's prior right to the use of 100 inches of water appurtenant to certain lands, but permitted a change in place of use. No change was made. The land to which the water was appurtenant continued to be irrigated, under a claimed date of priority as of 1885, and appellant now asserts the right to spread the 100 miner's inches of water not only over the lands to which it was originally appurtenant, but over addi-

tional lands, claiming an 1885 priority for all lands so irrigated. The law will not permit this. If, as appellant now contends, 100 miner's inches is a sufficient quantity of water to irrigate 300 acres of land, then the surplus over the amount reasonably necessary to irrigate the land for which it was originally appropriated (119.9 acres) was not within the original appropriation. A prior appropriator cannot claim or use more water than is reasonably necessary for the purposes of his appropriation. *Simmons v. Winters,* 21 Or. 35, 27 P. 7, 28 Am. St. Rep. 727; *Hindman v. Rizor,* 21 Or. 112, 27 P. 13; *Cole v. Logan,* 24 Or. 304, 33 P. 568; *Porter v. Pettengill,* 57 Or. 247, 110 P. 393; *Clough v. Wing,* 2 Ariz. 371, 17 P. 453; *Gunnison Irrigation Co. v. Gunnison Highland Canal Co.,* 52 Utah 347, 174 P. 852; *Johnston v. Little Horse Creek Irr. Co.,* 13 Wyo. 208, 79 P. 22, 70 L. R. A. 341, 110 Am. St. Rep. 986. Subsequent appropriators are entitled to insist that prior appropriations shall not be enlarged beyond the scope of original appropriation, if the proposed enlargement interferes with their rights. *Mattis v. Hosmer,* 37 Or. 523, 62 P. 17; *In re North Powder River,* 75 Or. 83, 144 P. 485, 146 P. 475; *Baer Bros. Land & Cattle Co. v. Wilson,* 38 Colo. 101, 88 P. 265; *Faden v. Hubbell,* 93 Colo. 358, 28 P. (2d) 247; *Jensen v. Birch Creek Ranch Co.,* 76 Utah 356, 289 P. 1097. If a prior appropriator desires to enlarge his appropriation, he must make a new appropriation, but such new appropriation will be inferior to all rights which have intervened since the prior appropriation was made. *Andrews v. Donnelly,* 59 Or. 138, 116 P. 569; *In re Waters of Umatilla River,* 88 Or. 376, 168 P. 922, 172 P. 97; *In re Water Rights of Hood River,* 114 Or. 112, 227 P. 1065; *In re Waters of Deschutes River,* 134 Or. 623, 286 P. 563, 294 P. 1049.

■ Appellant inquires whether or not, if the court's interpretation of the Owyhee decree is permitted to stand, the water right certificate will be recalled and a new one issued. There appears to be no statutory authority for the cancellation of outstanding certificates and the issuance of new ones under the circumstances of the present case. However, in regulating the diversion and use of the waters of the stream, the water master, under the direction of the state engineer, will be governed by the provisions of the court's decree herein. Section 116-302, O. C. L. A.; *Norwood v. Eastern Oregon Land Co.*, 139 Or. 25, 29, 5 P. (2d) ·1057, 7 P. (2d) 996.

■■ The stipulation in the Owyhee adjudication contained the following paragraph, of which no mention was made in our opinion:

"It is further agreed that as to the waters rising on the lands of said Anderson in Section 15, Township 33 South, Range 39 E. W. M., that said water shall be used by both parties in the future as same have been in the past, and that neither party shall make nor attempt to make any use of said waters that will take the said waters away from the premises of the other party as the same are now used."

This paragraph, with the rest of the stipulation, was embodied in the Owyhee decree. Appellant complains because our opinion failed to give it effect. We think that it would have been improper for us to have attempted to do so. The language of the paragraph is too vague and indefinite to be the basis of any decree. Even if it had been sufficiently definite, the agreement was a mere personal covenant between former owners of the respective premises involved herein, and did not run with the land. *Houston v. Zahm*, 44 Or. 610, 622, 76 P. 641, 65 L. R. A. 799. Moreover, if it had run with

the land, appellant being now the owner of the land in section 15 formerly owned by Anderson, respondent's predecessor, it would appear that whatever rights might have been predicated upon the agreement have become extinguished by merger. 14 Am. Jur., Covenants, Conditions and Restrictions, sections 5, 293.

■ Our attention is called to the fact that Anderson, respondent's predecessor, and not Pacific Livestock Company, owned the lands in section 15, above referred to, at the time of the Owyhee adjudication. These lands were not involved in *Seaweard v. Pacific Livestock Company*, and hence were not affected by the decree therein or by the stipulation in the Owyhee adjudication. The Owyhee decree gave them an 1885 date of relative priority, and on that point is res judicata. Through oversight, we tabulated them under a 1904 date. Our opinion, therefore, will be modified by tabulating the lands in section 15, T. 33 S., R. 39 E., W.M., under the 1885 date of priority.

Other points raised by appellant have had our consideration, but we deem it unnecessary to discuss them. The petition for rehearing is denied.