Argued February 5; affirmed April 1, 1947

STAUB *v.* JENSEN ET AL.
(178 P. (2d) 931)

*James T. Chinnock,* of Grants Pass, for appellants.

*George M. Roberts,* of Medford (with G. W. Kellington, of Medford, on brief), for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY, HAY and WINSLOW, Justices.

HAY, J.

The plaintiff, Minnie Staub, brought suit to quiet title, as against rights claimed by defendants, to the use of the waters of Caris Creek, a tributary of Applegate River, which is a tributary of Rogue River. The amended complaint alleges that, more than seventy years ago, predecessors in interest of the plaintiff, in the ownership of certain land riparian to Caris Creek, made an appropriation of the waters thereof by diversion to and upon such land and thereby irrigated a portion thereof, and that such waters were used by plaintiff's said predecessors and by plaintiff continuously, during the dry season of every year, from the time of such original diversion until on or about June 27, 1945, at which latter time the defendant water master interferred. Use of such water by plaintiff and her predecessors is alleged, with all the appropriate adjectives, to have been adverse, under a claim of right, as against all the world in general and the defendants in particular.

Anticipating an affirmative defense of res judicata, the amended complaint alleges that, although she and her late husband, A. J. Staub, owned and resided upon the land involved herein at the time when the relative rights to the waters of said stream were adjudicated (Adjudication of Rogue River and its Tributaries. Circuit Court for Jackson County, Oregon. Final decree April 26, 1919), and had used the waters of such stream for irrigation of their land continuously from 1907 onward, no notice of such adjudication was given to or received by plaintiff or her husband. Mr. Staub died in November, 1938, and plaintiff alleges that, since his death, she has continued to reside upon said land and to use the waters of said stream beneficially and adversely as aforesaid.

In said adjudication, there was awarded, as appurtenant to lands belonging to defendants and their predecessors and situate downstream from plaintiff's land, certain rights to the use of the waters of Caris Creek for irrigation purposes. The defendants, by their answer, allege that the rights so awarded are prior in time and superior to any rights appurtenant to plaintiff's land. They plead the adjudication decree above referred to, and allege that notice of the adjudication was duly and regularly given to the plaintiff and her predecessors; that plaintiff and her predecessors had full knowledge of the pendency of the adjudication proceedings and full and complete opportunity to appear and be heard therein, but that they failed, refused and neglected so to appear, and, by the decree, were forever estopped and precluded from maintaining or asserting any right to the use of said waters.

The circuit court, after a hearing, made findings of fact and conclusions of law in favor of plaintiff, and entered a decree quieting her title "to use all of the waters of Caris Creek during the dry seasons of the year, and particularly during June, July, August and September, and prior to the rains in any season" for domestic purposes and for irrigation of not in excess of 13.9 acres of land, as against the claims of the defendants. From this decree, the defendants have appealed.

Plaintiff has resided upon her Caris Creek land since about 1907, when she married her late husband. Prior to their marriage, Mr. Staub had lived on the land, having deraigned title thereto, by mesne conveyances, from the original homesteader. The land evidently had been irrigated prior to Mr. Staub's

ownership, but there was no proof of the date of original appropriation. Mrs. Staub, however, testified that, to her own knowledge, water had been used on the place for irrigation purposes continuously ever since the year 1907. Mr. and Mrs. Staub increased somewhat the area of irrigated land, but the date and extent of such increase were not shown. There was evidence that, in 1922, Mr. Staub claimed to be irrigating approximately twelve acres. The stream is small, and its summer flow, from about the middle of June onward in every year, is inadequate even for the purposes of plaintiff's small appropriation. Under those circumstances, plaintiff and her predecessors have diverted and used for irrigation and domestic purposes the entire flow of the stream. Their ditches were "never closed".

Mrs. Staub's land is situated upon the upper reaches of Caris Creek. Measurements made by the water master on July 16, 1945, showed that the total discharge of the stream at the head of Mrs. Staub's main ditch was 0.10 cubic feet per second, which was sufficient for the irrigation of only about eight acres of land. At the same time there was a discharge of 0.05 cubic feet per second at the point where the stream leaves Mrs. Staub's premises and enters those of one of the defendants. Mrs. Staub irrigates about two acres of garden, a small orchard, and a few acres of alfalfa, besides using water for domestic purposes.

The defendants sought to prove that, prior to 1943, the only use that Mrs. Staub made of the waters of the stream was through "a little ditch running to the house", and that, in 1943, she newly seeded some ten or twelve acres of land to alfalfa, the irrigation of which depleted the water to a point where the rights

of the defendants were seriously interfered with. There was evidence, however, that from 1924 on, year after year, the defendants and their predecessors had complained to the water master that Mrs. Staub and her husband were diverting from the stream water to which such complainants claimed prior rights. The evidence, in our opinion, was sufficient, and indeed ample, to support the trial judge's findings.

In November, 1908, the Oregon Conservation Commission, comprised of a number of prominent engineers, lawyers and publicists, in a report to the governor of the state, recommended that legislation should be adopted giving the state complete control over all diversions of water from streams, providing adequate procedure for the determination of the relative rights to the use of the waters of every stream system, and requiring the recordation of all existing water rights and of new rights as initiated. In the following year, evidently in response to the commission's recommendations, the legislature passed an act "providing a system for the regulation, control, distribution, use, and right to the use of water, and for the determination of existing rights thereto within the State of Oregon, * * *." (General Laws of Oregon, 1909, chapter 216; section 116-402, et seq., O. C. L. A.) By this act, the state definitely abandoned the old method of appropriation of water by mere diversion and application to beneficial use, and adopted in lieu thereof a system of filing all applications to appropriate water with the state engineer, who, upon approval thereof, issues formal permits to the applicants. Construction of diversion works and application of the water to the approved beneficial use follow, and, in due course, after proof of completion of the project, certificates of water right are issued to the

applicants. This is the only method whereby, since the 1909 act became effective, water rights may be acquired in Oregon.

■■ In *Tudor v. Jaca,* 178 Or. 126, 164 P. (2d) 680, 690, this court said:

"* * * It is a debatable question, under the water code, whether, subsequent to 1909, an appropriation of water can be initiated by adverse use, or in any other manner than under the statutory procedure. Section 116-419, et seq., O. C. L. A. Such procedure is declared to be exclusive. Section 116-402, O. C. L. A."

On the assumption that the decree in the Rogue River adjudication cut off whatever rights the Staubs may have had prior thereto, defendants contend, relying upon the quoted dictum in *Tudor v. Jaca,* supra, that, subsequent to the decree, they could not have acquired any rights whatever based upon adverse possession. It will be noted, however, that our dictum referred only to the *initiation* of an appropriation by adverse use. Mrs. Staub's appropriation was initiated by diversion and use under the old law prior to the adoption of the 1909 water code.

Mrs. Staub testified definitely and emphatically that neither she nor her husband had any notice or knowledge of the pendency of the Rogue River adjudication proceedings. The adjudication decree, a copy of which is in the record of this case, contains a list of all persons who, although duly and regularly notified of the commencement of the proceedings, failed to appear or submit therein proof of any right to the use of the waters of the Rogue River or any tributary thereof, and each such person was declared to be in default. The list does not include the names of either Mrs. Staub or her husband.

The statute (section 116-811, O. C. L. A.) requires the state engineer to make an examination of every stream in process of adjudication, and an approximate measurement of the lands irrigated from the various ditches and canals, and to cause a map or plat to be prepared, "showing with substantial accuracy the course of said stream, the location of each ditch or canal diverting water therefrom, and the legal subdivisions of lands which have been irrigated." The state engineer's map in the Rogue River adjudication, in its delineation of Caris Creek, does not extend far enough upstream to show plaintiff's land. It is quite probable that the surveyors may not have been aware of the existence of the little patch of irrigated land owned by Mrs. Staub and her husband upon the headwaters of this small stream. The water code does not seek to make an adjudication thereunder conclusive upon the rights of persons who have received no notice. The effect of the code in this respect is shown by section 33 of the 1909 act (section 116-819, O. C. L. A.), which reads as follows:

"The determinations of the state engineer, as confirmed or modified as provided by this act in proceedings, shall be conclusive as to all prior rights and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination."

That section has been construed by this court as follows:

"* * * Section 33 in effect declares a decree of the court confirming a determination of the board to be conclusive as to claimants *lawfully embraced in the determination*. This declaration precludes making such decree or order of determination binding and conclusive upon any except those upon whom service of notice has been made pursuant

to the statute. Section 34 states that it is the duty of all claimants when such proceedings are instituted to submit proof of their claims. The latter part of this section, particularly referring to interested parties who have not been served with notice, provides that such parties who had no knowledge or notice of the pendency of the proceedings may intervene upon equitable terms at any time within one year, or be precluded from having their rights adjudicated in such proceeding; that is, the words 'any such claimant' who fails to submit proof of his claim and is barred and estopped from subsequently asserting any prior rights refer to 'existing claimants upon the stream or other body of water lawfully embraced in the determination,' including only those who have been duly served with process. Such construction renders each clause of these two sections efficacious. * * *'' *In re Willow Creek,* 74 Or. 592, 618, 144 P. 505, 146 P. 475.

As neither Mrs. Staub nor her husband had any notice of the pendency of the proceedings, it is apparent that they were not concluded thereby in any manner, even if they had actual knowledge thereof. Estoppel cannot be invoked to deprive people of vested rights by a proceeding to which they were not parties and, as to which, they received no notice.

In June, 1922, plaintiff's late husband brought suit against defendants and their predecessors, seeking to establish his rights to the use of the waters of Caris Creek and to enjoin the defendants from interfering therewith. In the complaint, he alleged that his irrigated land was approximately twelve acres in extent. A preliminary injunction was issued. No appearance was made by any of the defendants and, on June 10, 1924, the court dismissed the suit for want of prosecution. Prior to 1943, the water master, when defendants

complained to him regarding Mrs. Staub's use of the water, declined to interfere, in the mistaken belief that the restraining order was still effective, but, in any event, Mrs. Staub, having posted her land against trespassers, kept the defendants at a respectful distance, and, *vi et armis,* went right on using the water.

■■ On July 1, 1943, Mrs. Staub filed with the state engineer an application for a permit to appropriate 0.184 cubic feet per second of the water of Caris Creek for irrigation and domestic purposes on 13.9 acres of land. Defendants argue that, by making such filing, she expressly abandoned whatever rights she may have had prior thereto. The argument is ineffectual. There is no evidence that Mrs. Staub intended to abandon her former rights, and the law presumes to the contrary. *In re Waters of Deschutes River,* 134 Or. 623, 286 P. 563, 294 P. 1049.

The decree appealed from is affirmed with costs.